JASON D. RUSSELL (SBN 169219)
Jason.Russell@skadden.com
HILLARY A. HAMILTON (SBN 218233)
Hillary.Hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

JAMES Y. PAK (SBN 304563)
James.Pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:(650) 470-4500
Facsimile: (650) 470-4570

OF COUNSEL:
MICHAEL W. MCTIGUE
Michael.McTigue@skadden.com
MEREDITH C. SLAWE
Meredith.Slawe@skadden.com
COLM P. MCINERNEY
Colm.McInerney@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendant,*
*Dollar Tree Stores, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARCO WALSH, HOWARD YOSHA, and ERICA MALDONADO, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DOLLAR TREE STORES, INC.,<br><br>Defendant. | Case No. 5:25-cv-01601-SVK<br><br>**DOLLAR TREE STORES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT.**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**<u>FILED UNDER SEPARATE COVER</u>:**<br><br>**(1) DECLARATION OF DANIEL BOWMAN IN SUPPORT;**<br><br>**(2) DECLARATION OF JAMES Y. PAK IN SUPPORT;**<br><br>**(3) REQUEST FOR JUDICIAL NOTICE; and**<br><br>**(4) [PROPOSED] ORDERS.**<br><br>Hearing Date: July 29, 2025<br>Hearing Time: 10 a.m.<br>Judge: Hon. Judge Susan van Keulen<br>Complaint filed: February 14, 2025 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 29, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan van Keulen, United States Magistrate Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 6, 4th Floor, San Jose, CA 95113, Dollar Tree Stores, Inc. ("Dollar Tree") will, and hereby does, move for an order dismissing the Class Action Complaint of Plaintiffs Marco Walsh, Howard Yosha, and Erica Moldonado ("Plaintiffs") under Fed. R. Civ. P. 12(b)(1) for lack of standing, Fed. R. Civ. P. 12(b)(3) for improper venue (as to two of the Plaintiffs), and Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of James Y. Pak, dated April 29, 2025 ("Pak Declaration") and the Declaration of Daniel Bowman, dated April 29, 2025 ("Bowman Declaration"), all pleadings and papers on file in this matter, and upon such argument and other matters as may be presented at the time of the hearing or otherwise.

Dollar Tree moves to dismiss under Fed. R. Civ. P. 12(b)(1) because Plaintiffs fail to allege an actual and concrete injury-in-fact sufficient to confer Article III or statutory standing, alleging only abstract and hypothetical injury.

Dollar Tree moves to dismiss Plaintiffs Yosha and Maldonado under Fed. R. Civ. P. 12(b)(3) for improper venue because Dollar Tree is a Virginia corporation headquartered in Chesapeake, Virginia, Plaintiffs Yosha and Maldonado reside outside this District and their claims have *no connection whatsoever* to this District, and thus this Court lacks personal jurisdiction as to their claims, which should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a).

Dollar Tree moves to dismiss under Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to plead:

(1) invasion of privacy or intrusion upon seclusion because they do not allege Dollar Tree engaged in intentional or highly offensive conduct or that they had a reasonable expectation of privacy;

(2) a violation of the California Invasion of Privacy Act, California Penal Code § 631(a)

("CIPA") because Dollar Tree did not intercept the contents of any communications, was the intended recipient, and did not have the requisite intent to wiretap;

(3) a violation of CIPA, California Penal Code § 638.51 because the statute does not apply to internet communications and Plaintiffs' "pen register" theory contradicts its wiretapping theory as by definition pen registers do not capture the "contents" of communications;

(4) fraud, deceit and/or misrepresentation because they cannot allege actual damages, nor that Dollar Tree knew that its statements were purportedly false, nor that Dollar Tree had the requisite intent, and in any event the allegations fall far short of alleging sufficient detail of the alleged fraud to satisfy Fed. R. Civ. P. 9(b);

(5) unjust enrichment because the alleged existence of an express contract bars any unjust enrichment claim;

(6) breach of contract and breach of implied covenant of good faith and fair dealing because they did not, and cannot, allege actual damages, which are required to sustain a claim for both breach of contract and breach of the implied covenant of good faith and fair dealing; and

(5) trespass to chattels because the conduct was not intentional and there was no damage to a computer.

DATED: April 29, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ *Jason D. Russell*
Jason D. Russell

*Attorneys for Defendant,*
*Dollar Tree Stores, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ISSUES TO BE DECIDED .......................................................................................................3

BACKGROUND .......................................................................................................................3

A. Plaintiffs' Alleged Interactions With The Dollar Tree Website ..............................3

B. Plaintiffs' Counsel's Business Model Is To Threaten Dozens Of Companies With The Same Baseless Cookie Claims ................................................................4

C. An Arbitrator Already Dismissed The Very Same Claims Against Dollar Tree And Sanctioned Plaintiffs' Counsel For Engaging In Frivolous Litigation ...............................................................................................................7

LEGAL STANDARDS ...............................................................................................................9

ARGUMENT ............................................................................................................................11

I. PLAINTIFFS HAVE SUFFERED NO INJURY-IN-FACT AND LACK ARTICLE III STANDING ....................................................................................11

II. VENUE IS IMPROPER AS TO TWO OF THE THREE PLAINTIFFS .............13

A. Venue Does Not Lie In This District Under Section 1391(b)(1) ...............14

B. Venue Does Not Lie Under §§ 1391(b)(2) or 1391(b)(3) ..........................15

C. The Court Should Transfer This Action To The Eastern District Of Virginia ......................................................................................................16

III. PLAINTIFFS FAIL TO PLAUSIBLY STATE A CLAIM FOR RELIEF ............16

A. The Privacy Claims Fail To Allege "Highly Offensive" Conduct Or A Reasonable Expectation Of Privacy (Counts 1 And 2) ..............................16

B. The CIPA Claims Fail For Numerous Reasons, Including Failure To Allege Interception Of "Contents" (Counts 3 and 4) ..................................18

1. Plaintiffs Cannot State Claims Under CIPA § 631(a) ...................18

2. Plaintiffs Cannot State Claims Under CIPA § 638.51 ...................19

C. The Common Law Fraud, Deceit, And Misrepresentation Claim Fails To Allege Damages, Intent, Or Knowledge Of Falsity (Count 5) .............21

D. The Contract Claims Fail Because There Are No Damages, And Unjust Enrichment Is Duplicative Of Other Claims (Counts 6, 7, 8) ........22

E. The Trespass To Chattels Claim Fails Because The Conduct Was Not Intentional And There Was No Damage To A Computer (Count 9) .........24

CONCLUSION .........................................................................................................................25

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S):**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ..... 14

*Ambriz v. Coca Cola Co.*,
No. 13–cv–03539–JST, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ..... 15

*Amity Rubberized Pen Co. v. Market Quest Group Inc.*,
793 F.3d 991 (9th Cir. 2015) ..... 16

*Ash v. Bank of America N.A.*,
No. 2:10-CV-02821-KJM-KJN, 2014 WL 301027 (E.D. Cal. Jan. 28, 2014) ..... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 10

*Bates v. United Parcel Service, Inc.*,
511 F.3d 974 (9th Cir. 2007) ..... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 10

*Bennett v. Ohio National Life Assurance Corp.*,
92 Cal. App. 5th 723 (2023) ..... 23

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) ..... 24

*Calcano v. Swarovski North America Ltd.*,
36 F. 4th 68 (2d Cir. 2022) ..... 6, 7

*C. M. v. MarinHealth Medical Group, Inc.*,
No. 23-CV-04179-WHO, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ..... 13, 23

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) ..... 23

*Casillas v. Berkshire Hathaway Homestate Insurance Co.*,
79 Cal. App. 5th 755 (2022) ..... 25

*Casillas v. Transitions Optical, Inc.* (Order),
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) ..... 20

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*,
Nos. 23-35560, 23-35585, 2025 WL 716341 (9th Cir. Mar. 6, 2025)....9

*Cody v. Ring LLC*,
No. 23-cv-00562-AMO, 2025 WL 240763 (N.D. Cal. Jan. 16, 2025)....19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....14

*Daniels-Hall v. National Education Ass'n*,
629 F.3d 992 (9th Cir. 2010)....10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....24, 25

*Doutherd v. United Parcel Service, Inc.*,
No. 21-15966, 2022 WL 17582527 (9th Cir. Dec. 12, 2022)....21

*In re Facebook Internet Tracking Litigation*,
140 F. Supp. 3d 922 (N.D. Cal. 2015)....12

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020)....19

*Fladeboe v. American Isuzu Motors Inc.*,
150 Cal. App. 4th 42 (2007)....22

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)....17

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025)....5

*Gerlinger v. Amazon.Com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004)....23

*Global Real Estate Investments v. Anoteros, Inc.*,
No. CV 13-1943 DSF (VBKx), 2014 WL 12696764 (C.D. Cal. Feb. 26, 2014)....22

*In re Google Assistant Privacy Litigation*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....23

*In re Google, Inc. Privacy Policy Litigation*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)....12

*In re Google, Inc. Privacy Policy Litigation*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....11, 17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....18

*Guzman v. Walmart Inc.*,
No. 22-cv-3465, 2023 WL 4535903 (N.D. Ill. May 15, 2023) .... 7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 16, 17

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .... 17

*Heiting v. FKA Distributing Co.*,
No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .... 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .... 17

*Hodes v. Van's International Foods*,
No. CV 09–01530 RGK (FFMx), 2009 WL 10674101 (C.D. Cal. June 23, 2009) .... 22

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .... 22, 24

*Huynh v. Quora, Inc.*,
No. 18-cv-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .... 13, 23

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .... 13, 24

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (E.D. Cal. 2012) .... 17, 24, 25

*Johnson v. 27th Ave. Caraf, Inc.*,
9 F.4th 1300 (11th Cir. 2021) .... 7

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .... 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .... 10

*Kim v. McDonald's USA, LLC*,
No. 21-cv-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) .... 12

*Klein v. Meta Platforms, Inc.*,
No. 20-cv-08570-JD, 2025 WL 295361 (N.D. Cal. Jan. 24, 2025), *amended and superseded*, No. 20-cv-08570-JD, 2025 WL 489871 (N.D. Cal. Feb. 13, 2025) .... 12

*LaGuardia v. Designer Brands, Inc.*,
No.: 19cv1568 JM(BLM), 2020 WL 2463385 (S.D. Cal. May 7, 2020) .................. 14, 15, 16

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................. 9

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .............................................................................. 10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)...................................................................... 18

*Miller v. Hambrick*,
905 F.2d 259 (9th Cir. 1990) ................................................................................ 16

*Mohebbi v. Khazen*,
50 F. Supp. 3d 1234 (N.D. Cal. 2014) .................................................................... 21

*Mothershed v. Justices of Supreme Court*,
410 F.3d 602 (9th Cir. 2005) ................................................................................ 10

*Muha v. Experian Information Solutions, Inc.*,
106 Cal. App. 5th 199 (2024) ............................................................................... 11

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ................................................................................ 10

*In re Nissan North America, Inc. Litigation*,
No. 18-cv-07292-HSG, 2019 WL 4601557 (N.D. Cal. Sept. 23, 2019).......................... 13, 16

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979) ................................................................................. 9

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) .............................................................................. 14

*Robinson Helicopter Co. v Dana Corp.*,
34 Cal. 4th 979 (2004) ......................................................................................... 21

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 4905217 (Cal. Super. Ct. Nov. 21, 2024) ............................ 11

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1990)............................................................................................. 10

*Ruiz v. Gap, Inc.*,
380 F. App'x 689 (9th Cir. 2010) ........................................................................... 22

*Sanchez Mora v. U.S. Customs & Border Protection*,
No. 3:24-cv-02430-TLT, 2024 WL 5378335 (N.D. Cal. Nov. 4, 2024) .................. 10, 14, 16

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018) ....................... 9

*Shah v. Capital One Financial Corp.*,
No. 24-cv-05985-TLT, 2025 WL 714252 (N.D. Cal. Mar. 3, 2025)................................... 13

*Shizzle Pop, LLC v. Aviva Sports*, Inc.,
No. CV 10–02574–RGK (SSx), 2010 WL 11509148 (C.D. Cal. Nov. 3, 2010).................. 22

*Silver v. Stripe, Inc.*,
Docket No. 4:20-cv-08196 (N.D. Cal. Nov. 20, 2020)................................................... 5, 24

*Sloan v. General Motors LLC*,
No. 16-cv-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020).............................. 24

*Smith, et al. v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ............................... 19

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ............................................................................. 19

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703-RFL, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025)........................... 19, 24

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
996 F. Supp. 2d 942 (S.D. Cal. 2014)................................................................................ 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................................... 11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................................... 10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ............................................................................................. 17

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006) ...................................................................................................................... 20

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ............................................................................................. 10

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .............................. 19

*Winsor v. Sequoia Benefits & Insurance Servs*., LLC,
62 F.4th 517 (9th Cir. 2023) .............................................................................................. 11

*Wishnick v. Frye*,
111 Cal. App. 2d 926 (1952) ........................................................................................ 21, 22

*In re Yahoo Mail Litigation*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................................. 17, 18

*Yunker v. Pandora Media, Inc.*,
No. 11–CV–03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)............................. 25

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ............................................................................................ 18

**<u>STATUTES</u>**

28 U.S.C. § 1391..........................................................................................................passim

28 U.S.C. § 1404(a) ........................................................................................................ 9, 16

28 U.S.C. § 1406(a) ........................................................................................................ 9, 16

Cal. Civ. Code § 1710...................................................................................................... 22

Cal. Penal Code § 631............................................................................................ 18, 19, 20

Cal. Penal Code § 637.2.................................................................................................... 11

Cal. Penal Code § 638.50.................................................................................................. 20

Cal. Penal Code § 638.52.................................................................................................. 20

*California Bill Analysis*, A.B. 929 Assembly, 4/21/2015................................................. 20

**<u>RULES</u>**

Federal Rule of Civil Procedure 9(b).................................................................................. 13

Federal Rule of Civil Procedure 12(b)........................................................................ 9, 10, 11

## PRELIMINARY STATEMENT

This lawsuit is part of a broader campaign by Plaintiffs' counsel, Seth Safier and his law firm Gutride Safier LLP ("Plaintiffs' Counsel"), to weaponize millions of everyday interactions between users and consumer-facing websites by disingenuously claiming that those interactions somehow amount to violations of privacy-related statutes and laws.[1] Plaintiffs' Counsel has threatened numerous other retailers with similar litigations (and threatened mass arbitrations) in an effort to coerce private settlements, untethered to the merits of any claims, that include massive and excessive attorney's fees that would never withstand even the most basic level of scrutiny. Each threatened action is premised on a single factual allegation: that the claimant purportedly visited a website, expressed a preference to reject certain types of website cookies, but nevertheless one or more of these types of cookies was placed on their web browser. This is one of *eight* substantially identical actions that Plaintiffs' Counsel has filed in this Court since December 31, 2024—and in the last year, it has also run online "click-bait" solicitations seeking claimants to pursue similar, lawyer-driven claims against at least *another 68 companies* (and the actual number of target companies is likely substantially higher). Many of these solicitations resulted in threatened class actions and arbitrations in the form of demand letters against the target companies that settled immediately without any public filings. So while the number of publicly-filed cases is not especially notable, this matter is part of a far-reaching scheme to weaponize the class action device and consumer arbitration agreements using threats to force early windfall settlements.

After Dollar Tree refused to capitulate, Plaintiffs' Counsel launched a multi-faceted attack, with this action being the latest tactic. Plaintiffs' Counsel first brought nearly identical claims in an arbitration, while simultaneously continuing to solicit additional claimants against Dollar Tree through misleading click-bait solicitations and threatening to commence mass arbitration against the company or a putative class action. But Dollar Tree chose to fight on principle and secured a full victory in the arbitration. The arbitrator issued an award that not only dismissed the case with

---

[1] Unless otherwise noted, all emphases are added, and all citations, footnotes, original alterations, and internal quotation marks are omitted from all quoted material. References to "Bowman Decl." are to the concurrently filed declaration of Daniel Bowman. References to "Pak Decl." are to the concurrently filed declaration of James Y. Pak.

prejudice because the claimant failed to provide any evidence to support her claims, but also awarded attorney's fees and costs, stating: "the actions on record in these proceedings and in the broader context are tantamount to harassment and are patently frivolous." Rather than concede defeat, Plaintiffs' Counsel went ahead and launched the present action and also commenced an additional arbitration against Dollar Tree.

Putting the improprieties of such tactics aside, this lawsuit can and should be dismissed now because it is filed by Plaintiffs who lack standing, in the wrong venue, and based on claims that are without merit. Specifically, Plaintiffs do not allege injury-in-fact sufficient to confer standing based on their limited interactions with the Dollar Tree Website. They failed to identify any personal information that was purportedly intercepted, or that caused injury, under both Article III and statutory standing principles. Moreover, at least two of the Plaintiffs have filed in the wrong venue because they do not reside and do not and cannot allege any harm came to them in this District.

But *assuming arguendo* the Court reaches the merits of the case, the Complaint ("Compl.") should be dismissed because it does not contain a single cause of action that plausibly states a claim for relief:

- **<u>Counts 1 and 2 (Invasion of Privacy and Intrusion Upon Seclusion)</u>**: the information allegedly disclosed by Dollar Tree to third parties is not subject to a reasonable expectation of privacy and is not "highly offensive."

- **<u>Counts 3 and 4 (California Invasion of Privacy Act (CIPA))</u>**: the claims fail because Dollar Tree did not intercept the contents of any communications, was the intended recipient, and did not have the requisite intent to wiretap. Website cookies and related technologies are not pen registers under CIPA § 638.51 because that provision does not apply to internet communications. In any event, Plaintiffs' "pen register" theory fatally contradicts its wiretapping theory, because by definition pen registers do not capture the "contents" of communications.

- **<u>Count 5 (Common Law Fraud, Deceit, Misrepresentation)</u>**: Plaintiffs cannot allege actual damages as required in a common law fraud case, nor that Dollar Tree knew that its statements were purportedly false, nor that Dollar Tree had the requisite intent, and in any event the Complaint falls far short of alleging sufficient detail of the alleged fraud to satisfy Fed. R. Civ. P. 9(b).

- **<u>Count 6 (Unjust Enrichment)</u>**: the alleged existence of an express contract bars any unjust enrichment claim.
- **<u>Counts 7 and 8 (Breach of Contract and Implied Covenant)</u>**: Plaintiffs did not, and cannot, allege, *inter alia*, any consideration or actual damages, which are required to sustain a claim for both breach of contract and breach of the implied covenant of good faith and fair dealing.
- **<u>Count 9 (Trespass to Chattels)</u>**: Dollar Tree lacks the requisite intent to trespass upon chattels, and in any event there was no damage to Plaintiffs' computers or their functioning.

For these reasons, as discussed in more detail below, Dollar Tree respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

## <u>ISSUES TO BE DECIDED</u>

1. Do Plaintiffs sufficiently plead injury-in-fact to establish Article III standing?
2. Is this District the proper venue for Plaintiffs Yosha and Maldonado's claims?
3. Do Plaintiffs sufficiently state claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631; (4) use of a pen register in violation of CIPA § 638.51; (5) common law fraud, deceit, and misrepresentation; (6) unjust enrichment (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; and (9) trespass to chattels?

## <u>BACKGROUND</u>

### A. <u>Plaintiffs' Alleged Interactions With The Dollar Tree Website</u>

Dollar Tree "is a Virginia corporation with its headquarters and principal place of business in Chesapeake, Virginia." (Compl. ¶ 9.) According to the Complaint, Dollar Tree "owns and operates" the www.dollartree.com website (the "Website") and www.familydollar.com website which visitors use to receive information about Dollar Tree's products, locate retail stores, and purchase products. (*See id.* ¶ 22.) The websites are alleged to contain first and third-party cookies, and a cookie consent banner which immediately displays when a visitor navigates to the websites. (*See id*. ¶¶ 23, 26.)[2] The banner informs visitors that the websites contain cookies and provides a link to "Manage Cookies,"

---

[2] Digital cookies, also called HTTP cookies or browser cookies, are small text files that store information in the form of data. *See*, *e.g.*, https://us.norton.com/blog/privacy/internet-privacy-third-party-cookies (last visited April 29, 2025).

and a "Reject Advertising Cookies" button to reject advertising cookies allegedly identified in the Dollar Tree Privacy Policy and in the "Manage Cookies" link, which describe how information is collected and shared with third parties. (*Id.* ¶¶ 24-25.)

As alleged, Plaintiff Walsh resides in the Northern District of California (Scotts Valley, California), Plaintiff Yosha resides in the Central District of California (Laguna Hills, California), and Plaintiff Maldonado resides in the Southern District of California (Vista, California). (*Id.* ¶¶ 6-8.) Plaintiffs allege they visited the Dollar Tree Website in either late 2024 or early 2025 "to browse information about Dollar Tree's products." (*Id.* ¶¶ 76, 84, 92.)[3] Plaintiffs do not allege that they purchased or searched for products, entered information into form fields, or interacted with the Website in a particular way. Plaintiffs instead claim they encountered the cookie consent banner and selected the "Reject Advertising Cookies" button. (*See id.* ¶¶ 77-78, 85-86, 93-94.) They allege that despite that selection, third-party tracking technology, such as cookies, continued to function. (*See id.* ¶¶ 81, 89, 97.) They also allege that as a result, Plaintiffs' "private" communications were intercepted by and disclosed to the third-party cookie providers.

Plaintiffs do not allege the nature of their "private" communications or that they took any substantive actions on the Website beyond interacting with the cookie consent banner. (*See id.* ¶¶ 81, 89, 97.) They also do not allege that Dollar Tree intentionally configured the cookie consent banner in a particular way, or that any alleged improper tracking occurred other than due to a good faith error.

### B. Plaintiffs' Counsel's Business Model Is To Threaten Dozens Of Companies With The Same Baseless Cookie Claims

Plaintiffs' Counsel has threatened and pursued similar claims against numerous other retailers and companies. Dollar Tree has identified no less than 68 identical online solicitations that Plaintiffs' Counsel has run since January 2024. (*See* Pak Decl. Exs. 5-6.) Each solicitation misleadingly asserts that users who visited a target retailer's website "during the last year using a Chrome browser" may "be the victim of privacy violations" and "may be entitled to compensation." (*Id.*) A review of the solicitations also indicates Plaintiffs' Counsel may be methodically working its way through the names of retailers on an alphabetical basis. With so many campaigns moving forward simultaneously,

[3] While the Complaint references both the Dollar Tree and Family Dollar websites, it does not allege that any of the Plaintiffs visited the Family Dollar website.

it is evident that little to no consideration is being given as to whether a particular website actually violates privacy-related statutes and laws. It appears that under Plaintiffs' Counsel's "file first, investigate later" theory of liability, *all* retailer websites are in violation.

Indeed, the present action is but one of eight substantially identical pending cases brought by Plaintiffs' Counsel alleging various privacy violations relating to the use of cookies.[4] The underlying factual allegations are distressingly similar and are not specifically tailored to any particular defendant. Each complaint (including the present Complaint) asserts claims for (a) invasion of privacy, (b) inclusion upon seclusion, (c) violations under CIPA § 631, (d) common law fraud, (e) deceit and/or misrepresentation, (f) unjust enrichment, and (g) trespass to chattels. Four of the actions (including the present Complaint) also assert claims for breach of contract and breach of implied covenant of good faith and fair dealing.

The manufactured nature of these claims is further apparent in Plaintiffs' Counsel's use of serial plaintiffs to pursue these actions. For example, Jonathan Gabrielli is a named plaintiff in four of these eight actions.[5] Gabrielli is also a named plaintiff in three other putative privacy class actions filed in the last year.[6] In one of these actions, the court dismissed Gabrielli's complaint with prejudice, finding that Gabrielli had "not suffered a concrete harm sufficient to confer Article III standing" because "the nature of the information contained in Gabrielli's [allegedly-collected data] does not implicate a legally protected privacy interest, nor does Gabrielli allege that he has suffered any observable loss because of [defendant's] conduct." *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *7, *9 (S.D.N.Y. Feb. 18, 2025). Vishal Shah is a named plaintiff in three of Plaintiffs' Counsel's recent

---

[4] *See Gabrielli v. Motorola Mobility LLC*, Docket No. 4:24-cv-09533 (N.D. Cal. Dec. 31, 2024); *Gabrielli v. Upbound Grp., Inc.*, Docket No. 4:25-cv-00631 (N.D. Cal. Jan. 17, 2025); *Shah v. Hilton Worldwide Holdings Inc.*, Docket No. 5:25-cv-01018 (N.D. Cal. Jan. 31, 2025); *Gabrielli v. Haleon US Inc.*, Docket No. 3:25-cv-02555 (N.D. Cal. Mar. 14, 2025); *Wiley v. Universal Music Grp., Inc.*, Docket No. 5:25-cv-03095 (N.D. Cal. Apr. 04, 2025); *D'Antonio v. Smith & Wesson Inc., Docket* No. 5.25-cv-03085-SVK (N.D. Cal. Apr. 4, 2025); *Pemberton v. Restaurant Brands International, Inc. et al*, Docket No. 4:25-cv-03647 (N.D. Cal. Apr. 25, 2025).

[5] *See Gabrielli v. Motorola Mobility LLC*, Docket No. 4:24-cv-09533 (N.D. Cal. Dec. 31, 2024); *Gabrielli v. Upbound Grp., Inc.*, Docket No. 4:25-cv-00631 (N.D. Cal. Jan. 17, 2025); *Gabrielli v. Haleon US Inc.*, Docket No. 3:25-cv-02555 (N.D. Cal. Mar. 14, 2025); *Shah v. Hilton Worldwide Holdings Inc.*, Docket No. 5:25-cv-01018 (N.D. Cal. Jan. 31, 2025).

[6] *See Gabrielli v. Insider, Inc.*, Docket No. 1:24-cv-01566 (S.D.N.Y. Feb. 29, 2024); *Gabrielli v. U.S. News & World Rep., L.P.*, Docket No. 1:24-cv-01685 (S.D.N.Y. Mar. 05, 2024); *John Sligh et al. vs. Google LLC*, Docket No. 24CV445330 (Cal. Super. Ct. Aug. 16, 2024).

actions,[7] as well as a named plaintiff in another nine putative class actions filed in 2024 and 2025—most of which involve alleged privacy violations.[8] And Christine Wiley is a named plaintiff in two of Plaintiffs' Counsel's recent actions.[9]

The duplicative class action complaints filed by Plaintiffs' Counsel function as a strategic complement to the equally duplicative arbitration claims Plaintiffs' Counsel has brought against multiple defendant companies. In at least three recent arbitrations, Plaintiffs' Counsel sought awards from arbitrators that defendants' arbitration agreements are unenforceable in cases where the underlying claims relate to data privacy and cookies technology, and subsequently petitioned to confirm those arbitral awards in court to then pursue a class action against the same company. *See Shah v. Constellation Brands, Inc.*, Docket No. 3:25-cv-01325, at 2 (N.D. Cal. Feb. 07, 2025); *Ussery v. Franchise World Headquarters, LLC.*, Docket No. 3:25-cv-01337, at 3 (N.D. Cal. Feb. 07, 2025); *Paul de Ayora v. Inspire Brands, Inc. et al*, Docket No. 3:25-cv-03645 at 3 (N.D. Cal. Apr. 25, 2025).

Unfortunately, none of this is surprising because Plaintiffs' Counsel's litigation strategy is simply a numbers game—brought not in the interest of justice but instead to extract settlements untethered to the merits of any claim. Respectfully, the Court should consider the broader context within which the present claims are brought, as it further underscores why such claims are both without merit and being pursued for an improper purpose. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 73, 77 (2d Cir. 2022) (affirming dismissal of plaintiffs' claims where these lawsuits were "five out of hundreds of substantively identical [ADA] lawsuits filed in the Southern District of New

---

[7] *See Shah v. Hilton Worldwide Holdings Inc.*, Docket No. 5:25-cv-01018 (N.D. Cal. Jan. 31, 2025); *Wiley v. Universal Music Grp., Inc.*, Docket No. 5:25-cv-03095 (N.D. Cal. Apr. 04, 2025); *Shah v. Constellation Brands, Inc.*, Docket No. 3:25-cv-01325 (N.D. Cal. Feb. 07, 2025).

[8] *See Francisco Roldan, III v. Bank of Am., N.A.*, Docket No. 2:24-cv-00136 (C.D. Cal. Jan. 05, 2024); *Saeedy v. Microsoft Corp.*, Docket No. 2:24-cv-00219 (W.D. Wash. Feb. 16, 2024); *Vishal Shah v. The Lloyd Pest Control Co.*, Docket No. 24CV438694 (Cal. Super. Ct. May 08, 2024); *Shah v. Hero Labs, Inc.*, Docket No. 4:24-cv-02777 (N.D. Cal. May 09, 2024); *Carrie Beets v. T-Mobile USA, Inc.*, Docket No. 2:24-cv-09344 (C.D. Cal. Oct. 29, 2024); *Sequin, Leonardo v. SelectQuote Ins. Servs. et al.*, Docket No. 616858/2024 (N.Y. Sup Ct. Sep. 24, 2024); *Vishal Shah v. Whole Foods Mkt. Inc*, Docket No. 8:25-cv-00085 (C.D. Cal. Jan. 16, 2025); *Vishal Shah vs. WHOLE FOODS MARKET CALIFORNIA, INC.* et al., Docket No. 25CV459558 (Cal. Super. Ct. Feb. 21, 2025); *Shah v. Jeff Peddie Ins. Agency, Inc.*, Docket No. 5:25-cv-01223 (N.D. Cal. Feb. 05, 2025).

[9] *See Wiley v. Universal Music Grp., Inc.*, Docket No. 5:25-cv-03095 (N.D. Cal. Apr. 04, 2025); *Shah v. Hilton Worldwide Holdings Inc.*, Docket No. 5:25-cv-01018 (N.D. Cal. Jan. 31, 2025).

York in late 2019," and the court "cannot ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings"). The *Calcano* court observed that "[a]ll of the complaints use identical language to state the same conclusory allegations" and "even contain the same typos," and "[t]his backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury." *Id.* at 77. The *Calcano* court could have been discussing Plaintiffs' Counsel here because the pattern is precisely the same.

"[F]ederal courts can protect their dockets from abuse by frequent filers so long as the measures taken are a reasonable response to the abuse and access to the courts is not entirely foreclosed." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021) (affirming imposition of Rule 11 sanctions against "serial plaintiff" and attorney who filed nearly-identical complaints alleging ADA violations against 26 defendants in Southern District of Florida); *see also Guzman v. Walmart Inc.*, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023) (dismissing putative consumer fraud class action and ordering plaintiff's counsel to file spreadsheet that "must identify every case filed by Plaintiff's counsel since 2020 where the theory of the case is similar to the case at hand"). Dollar Tree encourages the Court to exercise its discretion to protect its docket by inquiring as to the total number of companies targeted by Plaintiffs' Counsel on the same cookie claims.

### C. An Arbitrator Already Dismissed The Very Same Claims Against Dollar Tree And Sanctioned Plaintiffs' Counsel For Engaging In Frivolous Litigation

The present action follows Plaintiffs' Counsel's online solicitations against Dollar Tree, which copy the solicitations they have run against numerous other companies. *See supra* at 1, 4. Importantly, this action is also duplicative of a prior arbitration that Plaintiffs' Counsel pursued—unsuccessfully—against Dollar Tree. There, the claimant alleged she visited the Dollar Tree Website and "rejected advertising cookies [. . .] but nevertheless received advertising cookies on her web browser." (Pak Decl., Ex. 8 at 2.)[10] Replicating the strategy discussed above, Plaintiffs' Counsel proceeded to bring a non-arbitrability motion, arguing that the claimant was not bound by the Dollar Tree Terms & Conditions, and enclosing a declaration from the claimant attesting that she visited Dollar Tree's Website but "did not make any purchases." (*Id.*) After the claimant was deposed and

[10] The prior version of Dollar Tree's Website's Terms contained an arbitration agreement.

presented with a purchase record in her name, Plaintiffs' Counsel withdrew the non-arbitrability motion, stating that "'a member of [the claimant's] household made a purchase [on Dollar Tree's Website] with her credit card without her knowledge.'" (*Id.*) But as the arbitrator noted, "the Claimant [previously] had emphatically denied during the deposition that the credit card at issue belonged to her" and that she "did not testify at the deposition that she had a specific recollection of selecting the 'Reject Advertising Cookies' button from the . . . cookie consent banner." (*Id.*)[11]

On January 16, 2025, the arbitrator granted Dollar Tree's dispositive motion and dismissed the claims with prejudice. (Pak Decl. Ex. 8 at 6; Ex. 7 at 3.) The arbitrator found "there is no factual basis" for the claimant's allegations related to her visit to the Dollar Tree Website. (Pak Decl. Ex. 8 at 4.) The arbitrator was also "not convinced" that the claimant's declaration was "still fully accurate," noting that she had "disclaimed the one piece of documentary evidence that would have shown she visited the Website—the Dollar Tree purchase record from April 17, 2023, the very month that Claimant alleges she made one visit to the website." (*Id.* at 3.) The arbitrator also rejected Plaintiffs' Counsel's attempted fishing expedition into Dollar Tree's records, noting that Dollar Tree did not have any evidence regarding whether the claimant visited the Website or rejected advertising cookies as she alleged; rather, "[t]o determine whether a user received a particular cookie could only be confirmed by basic inspection of the user's device and any records retained on that device." (*Id.* at 4.)

Dollar Tree's request for attorneys' fees and costs was also granted. (*See* Pak Decl. Ex. 8 at 5-7; Ex. 7 at 2-3.) The arbitrator observed "[t]he record is replete with examples of actions taken by Claimant's representative that have resulted in increased fees." (Pak Decl. Ex. 8 at 5-6.) The arbitrator took notice of the existence of numerous other solicitations "including two new solicitations against the Respondent while these proceedings are pending" (*id.* at 5), that Dollar Tree "has shown that the Claimant's use of arbitration has been improper and potentially for the purpose of obtaining wide-ranging discovery" which was "potentially for use in other arbitrations or a putative class action" (*id.* at 5-6), and that it "has identified similar tactics employed by Claimant's counsel in other arbitrations, underscoring a pattern of behavior designed to harass and increase costs unjustifiably" (*id.* at 5-6).

[11] Many of the arbitrator's findings were set out in the Interim Award, which was "confirmed, adopted, and incorporated as if fully set forth herein" in the Final Award. (Pak Decl., Exs. 7 & 8.)

The arbitrator found "the actions on record in these proceedings and in the broader context are tantamount to harassment and are patently frivolous." (*Id.* at 6.) But rather than admit defeat, Plaintiffs' Counsel commenced an *additional* arbitration against Dollar Tree (*see* Pak Decl. Ex. 9) as well as this action, as well as running online solicitations (*see* Pak Decl. Exs. 1-4).

## LEGAL STANDARDS

Rule 12(b)(1): Standing. A complaint should be dismissed if the Court lacks subject matter jurisdiction, including a lack of Article III standing. *See Bates v. United Parcel Serv. Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("Standing is a threshold matter central to our subject matter jurisdiction."). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 2025 WL 716341, at *5 (9th Cir. Mar. 6, 2025) (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). Plaintiffs, as those invoking federal jurisdiction, "bear[] the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Rule 12(b)(3) Improper Venue. Rule 12(b)(3) allows a party to raise the defense of improper venue. When venue is improper within a district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Plaintiffs bear the burden of proving that venue is proper under Section 1391(b). *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Section 1391(b) provides that a civil action may be brought only in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions *giving rise to the claim occurred* . . .; or (3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Each named Plaintiff must *independently* satisfy Section 1391(b)'s requirements as to his or her individual claims. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137

(9th Cir. 2018) (dismissing two plaintiffs under the "rule in a proposed class action . . . that each named plaintiff must independently establish venue"); *Sanchez Mora v. U.S. Customs & Border Prot.*, 2024 WL 5378335, at *6 (N.D. Cal. Nov. 4, 2024) (collecting cases).

Rule 12(b)(6): Failure to State a Claim. A complaint must be dismissed under Rule 12(b)(6) when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a motion under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Statutory standing is also properly reviewed under Rule 12(b)(6). *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[*S*]*tatutory* standing requires dismissal for failure to state a claim.") (emphasis in original). A complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Courts are not required to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Generally, courts must assess challenges to jurisdiction under Rule 12(b)(1) before addressing the merits under Rule 12(b)(6). *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1990). Where the lack of subject matter jurisdiction under Rule 12(b)(1) is readily determined and "will involve no arduous inquiry," the Court should first rule as to its subject matter jurisdiction. *Id.*; *see also Mothershed v. Justices of Sup. Ct.*, 410 F.3d 602, 607 & n.4 (9th Cir. 2005).

At the Rule 12(b)(6) phase of litigation, courts should consider material that is subject to judicial notice or incorporated by reference into the pleading. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule . . . a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."). This Court need not accept as true

allegations that contradict matters properly subject to such judicial notice or by exhibit. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit . . . unwarranted deductions of fact, or unreasonable inferences.").

## ARGUMENT

### I. PLAINTIFFS HAVE SUFFERED NO INJURY-IN-FACT AND LACK ARTICLE III STANDING

Article III standing is a foundational requirement for a court to exercise subject matter jurisdiction. To show Article III standing, a complaint must demonstrate that (a) plaintiff suffered a concrete, particularized, and actual or imminent injury, (b) the injury was likely caused by defendant, and (c) the injury can be redressed by judicial relief. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). Plaintiffs do not meet this bar, and offer only conclusory allegations of injury that should be rejected as a matter of law.

A statutory right to sue does not "automatically satisf[y] the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiffs must, instead, show that there has been a "concrete and particularized" invasion of a legally protected interest. *Id*. at 340; *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339). While Plaintiffs bring a claim under CIPA, that statute only provides a right of action when there is an allegation of actual injury. *See* Cal. Pen. Code § 637.2(a). A CIPA claim is therefore incapable of circumventing the basic standing requirement of showing injury-in-fact. *Cf. In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 978-79 (N.D. Cal. 2014) (finding that heightened risk of future harms from alleged disclosure of user data to third parties, including browsing data, does not confer standing). This statutory standing argument would also apply if the matter were brought in California state court. *See Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 209-10 (2024) (noting although many consumer protection statutes authorize statutory damages "for violations that cause so little measurable *injury* that the cost of proving up damages would exceed the damages themselves," the purpose of injury-in-fact requirement is to establish an actual case or controversy between the parties) (emphasis in original); *Rodriguez v. Fountain9, Inc.*, 2024 WL 4905217, at *4 (Cal. Super.

Ct. Nov. 21, 2024) (finding plaintiff's damages based solely on CIPA statutory damages too "abstract and hypothetical").

Here, Plaintiffs have also failed to plead any non-abstract injury-in-fact. The Complaint mentions claims of purported injury but, as demonstrated below, none of these abstract claims amount to a valid injury for the purposes of standing.

**No Loss of Privacy.** Plaintiffs fail to allege that any of their sensitive personal information was disclosed to third parties as a result of the purported privacy violations. Instead, they allege that their "browsing history, visit history, Website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" were tracked and shared. (Compl. ¶ 30.) Courts have "rejected the argument that a loss of privacy arising from the theft of non-sensitive personal information, standing alone, supports Article III standing." *See, e.g.*, *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *7 (N.D. Ill. Sept. 27, 2022).

**No Loss in Value for Communications**. Plaintiffs contend that there was diminution in the value of their private and personal information and communications as a result of the alleged common law fraud, deceit, and/or misrepresentation claim. (Compl. ¶ 166.) However, this purported diminution in value of private and personal information and communications does *not* confer standing either, particularly where there is no allegation that Plaintiffs ever sought to sell that information to someone else or that someone else sought to purchase it. *See In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own."). The Northern District of California recently rejected the argument that the value of private communications can be quantified for standing purposes. *See Klein v. Meta Platforms, Inc.*, 2025 WL 295361, at *2 (N.D. Cal. Jan. 24, 2025); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015) ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information.").

**No Loss in Value of Devices.** Plaintiffs allege that cookies were stored on their browsers and

devices, and that those cookies purportedly "interfered with Plaintiffs' and Class members' use" of their property and information. (Compl. ¶ 205.) While Plaintiffs contend that the storage of cookies interfered with the use of their devices, they do not allege *how* they supposedly did so. Nor can they, because "[t]he code behind [cookies] will not infect your computer, install adware or malware on your device, or alter your devices." *See, e.g.*, https://us.norton.com/blog/privacy/internet-privacy-third-party-cookies (last visited April 29, 2025). Thus, the trespass to chattels claim fails because it "does not encompass . . . an electronic communication" that "damages the recipient computer system" or that "impairs its functioning." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003).

**No Injury in Contract.** For their two breach of contract-related claims, Plaintiffs must allege "(1) the existence of a contract, (2) their performance under the contract, (3) defendants' breach of the contract, and (4) damages." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 691 (N.D. Cal. 2021); *see also Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *9 (N.D. Cal. Mar. 3, 2025). But for Plaintiffs to establish an implied contract in the data privacy context, they must at least allege consideration. *See C. M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *3-4 (N.D. Cal. Jan. 19, 2024) (collecting cases); *see also Huynh v. Quora, Inc.*, 2019 WL 11502875 *10 (N.D. Cal. Dec. 19, 2019) (holding "Plaintiffs have not shown that they paid anything for the asserted privacy protections."). Plaintiffs never allege any consideration, nor explain how Defendant could have breached the Privacy Policy, nor that any damages resulted. (*See* Compl. ¶¶ 186-90.) Given Plaintiffs alleged they only browsed the site, and did not make any purchases, their own allegations establish they can never allege consideration.

In sum, by failing to allege a concrete injury-in-fact, Plaintiffs fail to establish standing and so their Complaint should be dismissed.

## II. VENUE IS IMPROPER AS TO TWO OF THE THREE PLAINTIFFS

As shown, "[o]nce a defendant challenges venue, the plaintiff has the burden of demonstrating that venue is proper in the chosen district." *In re Nissan N. Am., Inc. Litig.*, 2019 WL 4601557, at *3 (N.D. Cal. Sept. 23, 2019). Moreover, each named Plaintiff must *independently* satisfy § 1391(b)'s requirements as to his or her individual claims. *Supra* at 9, 10. When venue is improper within a district, a defendant may move for outright dismissal or for transfer of the action under § 1406(a).

*See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) (explaining that a defendant "for whom venue is improper may move for dismissal or transfer for improper venue under 28 U.S.C. § 1406(a)"). Alternatively, "for the convenience of parties and witnesses, and in the interest of justice, a court may transfer a civil action to any other district where it might have been brought" under § 1404(a). *Sanchez Mora*, 2024 WL 5378335, at *6. Here, Plaintiffs Yosha and Maldonado's claims must be dismissed or transferred for improper venue.

**A. <u>Venue Does Not Lie In This District Under Section 1391(b)(1)</u>**

For purposes of § 1391(b)(1), "[a] corporate defendant 'resides' in the [Northern] District of California if, treating this District as a separate state, the defendant would be subject to personal jurisdiction here." *LaGuardia v. Designer Brands, Inc.*, 2020 WL 2463385, at *3 (S.D. Cal. May 7, 2020). "In analyzing venue, it is not enough for Plaintiffs to prove" Dollar Tree is "subject to personal jurisdiction in California as a whole." *Id*.

To exercise general jurisdiction over Dollar Tree, its contacts with California must be so "continuous and systematic as to render it essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). For a corporate defendant, that means either the state of incorporation or its principal place of business. *Id*. at 137. "To hold [Dollar Tree] subject to general jurisdiction simply because they operate stores within the state of California and target consumers in California is hardly an exceptional case, or one demonstrating the continuous and systematic contact the Supreme Court had in mind." *LaGuardia*, 2020 WL 2463385, at *4 (finding no general jurisdiction over defendant retailer with "48 brick-and-mortar locations within the state of California" because defendant's "state of incorporation and principal place of business is Columbus, Ohio"). Here, Plaintiffs allege Dollar Tree "is a Virginia corporation with its headquarters and principal place of business in Chesapeake, Virginia." (Compl. ¶ 9.) Thus, this court does not have general jurisdiction over Dollar Tree.

Specific jurisdiction arises where (1) the defendant has performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business in California; (2) the plaintiff's claims *arise out of or result from the defendant's forum-related activities*; and (3) the exercise of jurisdiction is reasonable. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

475–76 (1985)). "[I]t is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class." *Ambriz v. Coca Cola Co.*, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014).

Here, because Plaintiffs Yosha and Maldonado's claims have *no connection whatsoever* to this District, this Court lacks personal jurisdiction as to their claims. Plaintiff Yosha alleges he resides in the Central District of California (Laguna Hills, California) and Plaintiff Maldonado alleges she resides in the Southern District of California (Vista, California). (Compl. ¶¶ 7-8.) Only Plaintiff Walsh resides in this District. (*Id.* ¶ 6.) Plaintiffs allege they were harmed when they visited the Dollar Tree Website "to browse information about Dollar Tree's products." (*Id.* ¶¶ 76, 84, 92.) "The fact that Plaintiff [Walsh] allegedly [browsed the Dollar Tree Website] while in this District does not negate [Yosha and Maldonado's] independent need to connect their claims to this District." *LaGuardia*, 2020 WL 2463385, at *5.

Because Plaintiffs Yosha and Maldonado "do not allege that their claims arise out of any [Northern] District of California activities," they "have not tied their claims to any forum-related act or transaction on the part of" Dollar Tree. *Id*. Moreover, the alleged contacts Dollar Tree had with them "do not necessitate the conclusion that [Dollar Tree] could have reasonably anticipated being haled into court in this District in an action alleging" privacy violations based on their website browsing at their homes. *Id*. Thus, there is no basis to exercise personal jurisdiction over Dollar Tree and this Court can find Dollar Tree does not "reside in this District for purpose of the 28 U.S.C. § 1391(b)(1) venue analysis." *Id*.

### B. <u>Venue Does Not Lie Under §§ 1391(b)(2) or 1391(b)(3)</u>

Plaintiffs cannot establish venue is proper here pursuant to § 1391(b)(2), which permits actions to be filed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Because Yosha and Maldonado's alleged Website browsing occurred outside this District, and "[t]he claims of Plaintiff [Walsh] are irrelevant to the venue determination," venue is not proper here. *LaGuardia*, 2020 WL 2463385, at *5.

Moreover, venue under § 1391(b)(3) may be invoked only where "there is no district in which an action may otherwise be brought[.]" 28 U.S.C. § 1391(b)(3). This action may be brought, and

indeed should have been brought, in the Eastern District of Virginia, where Dollar Tree has its corporate headquarters. (Compl. ¶ 9; Bowman Decl. ¶ 5.) Thus, it follows that venue also does not lie in this District under § 1391(b)(3). *See LaGuardia*, 2020 WL 2463385, at *5.

### C. The Court Should Transfer This Action To The Eastern District Of Virginia

Because venue is improper within this district, this Court "shall dismiss, or if it be in the interest of justice, transfer [this] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Ninth Circuit has repeatedly confirmed that "normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (transfer under 28 U.S.C. § 1631); *accord Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *see also In re Nissan N. Am., Inc. Litig.*, 2019 WL 4601557, at *7 (transferring putative class action to district encompassing defendant's headquarters in Tennessee, where only one plaintiff could establish venue in this District); *LaGuardia*, 2020 WL 2463385, at *6, *9 (severing and transferring non-resident plaintiffs' claims to district where defendant was headquartered, "in the interests of justice and [to] cure[] the defect in venue" pursuant to 28 U.S.C. § 1406(a), and then transferring resident plaintiff's claim pursuant to 28 U.S.C. § 1404(a)). Here, too, the interest of justice will be best served by transfer of this action to the Eastern District of Virginia.

Additionally, as detailed in Dollar Tree's concurrently-filed Motion to Transfer, this action should be transferred under 28 U.S.C. § 1404(a) pursuant to the forum-selection clause in the Dollar Tree Terms & Conditions providing for "the exclusive jurisdiction of the federal . . . courts encompassing the city of Norfolk, Virginia for purposes of any Dispute" and/or because Dollar Tree is headquartered there and the witnesses and evidence are there, so transfer is in the interests of justice and for the convenience of the parties and witnesses. *See* Motion to Transfer at 8-23.

## III. PLAINTIFFS FAIL TO PLAUSIBLY STATE A CLAIM FOR RELIEF

### A. The Privacy Claims Fail To Allege "Highly Offensive" Conduct Or A Reasonable Expectation Of Privacy (Counts 1 And 2)

Plaintiffs do not state a claim for either invasion of privacy or intrusion upon seclusion. These claims are often considered together because their standards overlap. *See Hammerling v. Google LLC*,

615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022).

Under either theory, courts ask whether the invasion of privacy "occur[red] in a manner highly offensive to a reasonable person" or constituted an "egregious breach of social norms" underlying the privacy right. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 294 (2009); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020). This sets a "high bar" meant to exclude *de minimis* intrusions that do "not even … require an explanation or justification by the defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014).

Here, Plaintiffs allege their "browsing history, visit history, Website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" were tracked and shared. (Compl. ¶ 30.) None of that information is highly offensive, and is instead information that is involved in everyday internet communications. *See, e.g.*, *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (E.D. Cal. 2012) (dismissing, at motion to dismiss phase, privacy claims based on disclosures of unique device identifier number, personal data, and geolocation information as not rising to a "serious invasion"); *Fogelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 992 (2011) ("routine commercial behavior" does not rise to "egregious breach of social norms"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (finding, at motion to dismiss phase, that logging users' "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" was not highly offensive); *see also Hammerling*, 615 F. Supp. 3d at 1090-91 (unique search terms, documents viewed, basic identification information, or geolocation information on a motion to dismiss); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 (granting motion to dismiss and noting "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy.")

Plaintiffs also cannot allege that they had a reasonable expectation of privacy in the aforementioned categories of information. (Compl. ¶ 116.) Such information was not subject to a reasonable expectation of privacy, especially since it is the type of information that is routinely collected by websites across the internet. *See United States v. Forrester*, 512 F.3d 500, 503 (9th Cir.

2008) (plaintiffs do not have a privacy expectation over IP addresses visited because plaintiffs "should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information"); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (no reasonable expectation of privacy in the URL of a website the plaintiff had previously visited or in basic identification information); *Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (no reasonable expectation of privacy in contents of emails broadly, only in "confidential" portions).

Plaintiffs fail to establish the highly offensive element or a reasonable expectation of privacy, and therefore both claims should be dismissed.

**B. <u>The CIPA Claims Fail For Numerous Reasons, Including Failure To Allege Interception Of "Contents" (Counts 3 and 4)</u>**

1. <u>Plaintiffs Cannot State Claims Under CIPA § 631(a)</u>

The allegations that are premised on purported violations of CIPA fail for numerous reasons, any one of which warrant dismissal here. ***First***, under CIPA § 631(a), "contents" of a communication means "the substance, purport or meaning of [the] communication"—*i.e.*, the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Here, Plaintiffs allege that many types of "record information" were transmitted to third parties but they fail to allege the "contents" of any of their communications were intercepted. In fact, the only input Plaintiffs allege they performed on the Website was clicking the button from the cookie consent banner to reject third-party advertising cookies. (*See e.g.*, Compl. ¶ 3.) Mere interactions with a website (*i.e.*, browsing activity) does not constitute "contents" of a communication. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing similar website wiretapping claims because intercepted "interactions" with website not sufficient to allege "contents"); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (non-actionable "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions").

***Second***, Plaintiffs have also failed to allege that Dollar Tree itself intercepted their

communications. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *7 (N.D. Cal. Apr. 4, 2025) (dismissing where plaintiffs did not allege defendant itself intercepted the communications).

***Third***, Dollar Tree is the intended recipient of any alleged communications and cannot be held liable for wiretapping. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("[CIPA] has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Applying this standard, courts have held that website owners who are "the intended recipient[s] of [a website user's] communication" cannot be directly liable for wiretapping because "[p]arties to a conversation cannot eavesdrop on their own conversation." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). Here, the alleged "communications" comprise browsing data that Plaintiffs provided to Dollar Tree via their interactions with the Dollar Tree Website. Accordingly, Dollar Tree is the known and intended recipient of the data and not liable for any "eavesdropping" related to that data.

***Finally***, Plaintiffs cannot allege aiding and abetting under the fourth clause of CIPA §631(a). (*See e.g.*, Compl. ¶ 135.) As an initial matter, Plaintiffs "must sufficiently plead a violation . . . of one of [CIPA's] first three clauses" which they have failed to do. *Cody v. Ring LLC*, 2025 WL 240763, at *4 (N.D. Cal. Jan. 16, 2025). The aiding and abetting clause also requires "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Intent is required, and Plaintiffs have not shown Dollar Tree had any intent to wiretap. Plaintiffs make conclusory allegations that Dollar Tree "intentionally and without consent" caused cookies to be stored on Plaintiffs' computers. (*See* Compl. at ¶ 203.) But the mere fact that Dollar Tree used third-party technologies does not establish intent. *Smith v. YETI Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (granting motion to dismiss and finding that placement of technology on website to "collect[] consumers' sensitive information" was "insufficient to support a plausible inference that [d]efendant knowingly agreed with or employed [the technology] to engage in conduct that violated the wiretapping statute").

2. <u>Plaintiffs Cannot State Claims Under CIPA § 638.51</u>

Plaintiffs cannot state a claim under CIPA § 638.51 because website cookies and related code

are not pen registers. The legislative history behind § 638.51 makes clear that the provision was intended to target telephone-related technologies, not internet technology more generally or even IP addresses and user-agent information specifically. *California Bill Analysis*, A.B. 929 Assem., 4/21/2015 (mentioning IP addresses zero times in the legislative history). The statutory definition of a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal. Code § 638.50(b). Pen registers are physically installed to track calls received or sent by a telephone number. *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112-13 (9th Cir. 2005). Their definition is inextricably linked to telephone surveillance; the plain language of the statute necessitates that it apply to telephones and not internet tracking. The California legislature confirmed this in 2015 when it enacted a new section, §638.50-55, with references to telephones only, well after the creation and popularization of the internet. For example, §§ 638.52(d)(1), (3) require that court orders authorizing pen register devices identify the person "in whose name . . . the telephone line to which the pen register,… is to be attached." Cal. Penal Code § 638.52(d)(1), (3). Moreover, a California court recently held that the pen register provision of CIPA "did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024). If the California legislature intended to apply the pen register sections of CIPA to non-telephones, it would and could have done so and would have not used telephonic-specific language. The allegations in this case have nothing to do with telephones and should be dismissed with prejudice.

In any event, Plaintiffs' theory of liability under CIPA § 638.51 is inconsistent with its other wiretapping allegations and cannot be maintained. A pen register is defined as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but *not the contents of a communication*." Cal. Penal Code § 638.50(b). Plaintiffs cannot have it both ways: either they allege that the communications intercepted have "contents" under § 631(a) or they allege that no "contents" are intercepted by the statutory definition of a pen register.

### C. The Common Law Fraud, Deceit, And Misrepresentation Claim Fails To Allege Damages, Intent, Or Knowledge Of Falsity (Count 5)

Plaintiffs allege two requisite elements of common law fraud—knowledge of falsity and intent to defraud—in a conclusory fashion. But Federal Rule of Civil Procedure 9(b) requires that the elements of fraud be alleged "with particularity" accompanied by the "who, what, when, where, and how" of the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Conclusory allegations are insufficient to meet this standard. *See, e.g.*, *Doutherd v. United Parcel Serv., Inc.*, 2022 WL 17582527, at *1 (9th Cir. Dec. 12, 2022); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1256 (N.D. Cal. 2014) (Plaintiff cannot "ask[] the Court [to] piece together which misrepresentations he alleges pertain to each of his fraud causes of action").

Here, Plaintiffs have failed to allege intent, knowledge of falsity, or damages with any level of particularity. Plaintiffs allege that purported misrepresentations in the Dollar Tree Website's cookie consent banner were "known exclusively to, and actively concealed" by Dollar Tree. (Compl. ¶ 164.) However, they offer no explanation of how the purported misrepresentations were known exclusively to Dollar Tree, or how Dollar Tree purportedly concealed the misrepresentations.

Plaintiffs also allege that Dollar Tree "knew, or should have known"—from purported testing and evaluation of the Dollar Tree Website's performance—that certain third-party cookies were allowed to be placed on Plaintiffs' browsers and devices after they reject advertising cookies from the cookie consent banner. (*Id*.) However, Plaintiffs do not explain what specific testing or evaluation was performed or should have been performed, or how those tests or evaluations would have led Dollar Tree to know of the purported misrepresentations in Dollar Tree's cookie consent banner. More importantly, Plaintiffs' allegation that Dollar Tree "knew, or should have known" about third-party cookies does not even meet the scienter requirement for fraud. In California, fraud requires an allegation that the defendant actually knew a statement was false or acted with reckless disregard for its truth or falsity, not merely that Dollar Tree knew, or should have known, about the existence of third-party cookies. *See Wishnick v. Frye*, 111 Cal. App. 2d 926, 930, (1952) ("[T]o satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the

untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant.") *see also id.* at 932 (reversing lower court on appeal because scienter was absent); Cal. Civ. Code § 1710; *Ash v. Bank of Am. N.A.*, 2014 WL 301027, at *13 (E.D. Cal. Jan. 28, 2014) ("The second element is the requirement of showing scienter: it must be shown that defendant knew the statement was false or acted with reckless disregard of its truth or falsity."); *Glob. Real Est. Invs. v. Anoteros, Inc.*, 2014 WL 12696764, at *2 (C.D. Cal. Feb. 26, 2014) (citing *Wishnick*).

These allegations are insufficient to state a claim under common law fraud. *See Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009) ("[M]erely conclusory" allegations of "scienter and intent to defraud" are insufficient to state a claim.); *Shizzle Pop, LLC v. Aviva Sports, Inc.*, 2010 WL 11509148, at *3 (C.D. Cal. Nov. 3, 2010) (similar).

Plaintiffs also fail to allege they suffered actual damages. *See Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 66 (2007) ("defrauded party is ordinarily limited to recovering out-of-pocket damages"). Plaintiffs allege loss of money and property, but fail to allege what money or property was lost. (Compl. ¶¶ 166.) They also allege loss of control, use, and diminution in value of, their private and personal information and communications. (*Id.* ¶¶ 166-7.) But courts reject these bare assertions because they cannot support a reasonable inference that the value of such information was reduced, or that there was a loss of some privacy interest. *See, e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (before Van Keulen, J.) ("Plaintiffs do not allege sufficient facts from which the Court may reasonably infer that Defendants' misappropriation reduced the value of Plaintiffs' information…. [T]hey merely allege . . . 'there is a market for consumers to monetize Personal Information'"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1004 (S.D. Cal. 2014) (rejecting "attempt to plead actual injury resulting from a loss of privacy" in case involving New York deceptive practices law).

### D. <u>The Contract Claims Fail Because There Are No Damages, And Unjust Enrichment Is Duplicative Of Other Claims (Counts 6, 7, 8)</u>

Claims for breach of contract and breach of the implied covenant of good faith and fair dealing require actual damages. *See Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) (rejecting

nominal damages argument and noting "a breach of contract claim requires a showing of appreciable and actual damage"); *Bennett v. Ohio Nat'l Life Assurance Corp.*, 92 Cal. App. 5th 723, 729 (2023) ("[B]reach of the implied covenant of good faith and fair dealing, *i.e.*, bad faith, include[s] a damages element."). As shown, both the (i) loss of privacy interest (e.g., browsing history) and (ii) diminution in value of private and personal information and communications did not result in any actual damages. (Compl. ¶¶ 118, 128, 166.)

Under breach of contract, Plaintiffs also allege they lost the full benefit of the bargain of contract, receiving "services from Defendant that were less valuable than described in the Privacy Policy." (*Id.* ¶¶ 189, 200.) But they did not and do not allege that they paid to browse the Website. As such, they provided no consideration for their use of the Website and are not entitled to claim the benefit of a bargain. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 834 (N.D. Cal. 2020) (rejecting benefit of bargain theory because "the FAC fails to allege that Plaintiffs actually provided consideration for the security services which they claim were not provided"); *C. M.*, 2024 WL 217841 at *3-4; *Huynh*, 2019 WL 11502875 *10 ("Plaintiffs have not shown that they paid anything for the asserted privacy protections.").

Plaintiffs' claim for breach of implied covenant of good faith and fair dealing is duplicative of the breach of contract claim and should be dismissed. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). This claim relies on the same alleged facts as the breach of contract claim, does not go beyond the description of contract breach, and seeks nearly identical relief. (Compl. ¶¶ 183-201.)

Plaintiffs also cannot maintain an unjust enrichment claim because Plaintiffs already allege the existence of a purported contract—the Dollar Tree Privacy Policy—and breach of that contract. (*Id.* ¶ 184.) Once again, Plaintiffs cannot have it both ways: they cannot allege unjust enrichment under a quasi-contract theory of liability when it has already alleged that there is an express contract covering the same subject matter between the parties. *See Gerlinger v. Amazon.Com, Inc.*, 311 F.

Supp. 2d 838, 856 (N.D. Cal. 2004) ("[U]njust enrichment is an action in quasi-contract" and "cannot lie where a valid express contract covering the same subject matter exists between the parties."); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020); *Hubbard*, 2024 WL 3302066, at *6 (Van Keulen, J.) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, [equitable relief] is not a true alternative theory of relief but rather is duplicative of those legal causes of action."); *Silver v. Stripe, Inc.*, Docket No. 4:20-cv-08196 (N.D. Cal. Nov. 20, 2020) (dismissing unjust enrichment claim as duplicative). The claim for unjust enrichment should therefore be dismissed as well.

**E. <u>The Trespass To Chattels Claim Fails Because The Conduct Was Not Intentional And There Was No Damage To A Computer (Count 9)</u>**

Trespass to chattels requires intentional interference with the possession of personal property. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024). But there is no credible allegation that Dollar Tree intentionally placed cookies on Plaintiffs' computers without consent—only bare allegations that Dollar Tree acted intentionally. (*See, e.g.*, Compl. ¶¶ 203, 205.) The mere fact that Dollar Tree used third-party technologies does not establish intent. *See Smith*, 2025 WL 877127, at *1 (finding in wiretapping context that placement of technology on website to "collect[] consumers' sensitive information" was "insufficient to support a plausible inference that [d]efendant knowingly agreed with or employed [the technology] to engage in conduct").

Nor do Plaintiffs' allegations satisfy the interference requirement. California law demands that for courts to find "electronic contact to be a trespass to computer systems generally involve[s] some actual or threatened interference with the computers' functioning." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024); *see also Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1342 (2003) (trespass to chattels "does not encompass . . . an electronic communication that neither damages the recipient computer system nor impairs its functioning."). Courts look for a "significant reduction in service constituting an interference with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069. Plaintiffs have provided only conclusory allegations to that effect, claiming that cookies have been stored on their browsers and devices and that such storage "interfered with Plaintiffs' and Class members' use" of their property and information. (Compl. ¶

205.) Plaintiffs have alleged no specific facts showing any sort of interference with the intended functioning of their devices.

Plaintiffs have also not shown any significant reduction in service, making only conclusory allegations of "[r]eduction of storage, disk space, and performance." (*Id.* ¶ 206.) Courts in this district have rejected that argument. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069; *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 763-65 (2022) (collecting cases, noting *Intel* does not support trespass to chattels protecting privacy interest); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013) (allegation that defendant "installed unwanted code that consumes portions of the memory on [plaintiff's] mobile device" failed to state claim); *Doe I,* 741 F. Supp. 3d at 846 ("[N]othing about the source code or the existence of cookies physically impairs the functioning of the plaintiffs' computing devices"). Plaintiffs have not shown that any purported cookies have physically impaired, interfered with, or significantly reduced service on their devices. The trespass to chattels claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Dollar Tree respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

DATED: April 29, 2025 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ *Jason D. Russell*
Jason D. Russell

*Attorneys for Defendant,*
*Dollar Tree Stores, Inc.*