**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (State Bar No. 350444)
rdurrant@kelleydrye.com
Glenn T. Graham (State Bar No. 338995)
ggraham@kelleydrye.com
888 Prospect Street, Suite 200
La Jolla, CA 92037
Tel.: (212) 808-7551
Fax: (212) 808-7897

*Attorneys for Amicus Curiae*
*Retail Litigation Center*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCO WALSH, HOWARD YOSHA, and ERICA MALDONADO, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOLLAR TREE STORES, INC.,<br><br>Defendant. | Case No. 5:25-cv-01601-SVK<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RETAIL LITIGATION CENTER'S MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE***<br><br>Hearing Date: July 29, 2025<br><br>Hearing Time: 10:00 a.m.<br><br>Judge: Hon. Susan van Keulen |

The Retail Litigation Center (the "RLC") respectfully submits this reply memorandum of points and authorities in further support of its motion to participate in this action as *amicus curiae*.

**ARGUMENT**

As Plaintiffs acknowledge, courts accept *amicus* submissions where an "*amicus* has an interest that may be affected by the decision but does not entitle the *amicus* to intervene," or where "the *amicus* has unique information or a new perspective that can help the court beyond what the parties can provide." Opp. at 3 (citing *United States v. Pacific Gas & Electric Co.*, No. 3:14-cr-00175, 2016 U.S. Dist. LEXIS 78111, at *3 (N.D. Cal. June 15, 2016)). The RLC's status as an industry association provides it with a unique perspective on litigation affecting the industry. The RLC has closely monitored the wave of claims under CIPA because the novel and unwarranted application of CIPA to Internet-based claims is a real and ongoing risk to its members. For that reason, the RLC has offered a helpful perspective in other cases on the issue of the weaponization of statutes that were not passed to implicate simple website or e-mail technology. *See, e.g.*, Br. of Retail Litigation Center, *Gutierrez v. Converse, Inc.*, No. 24-4797, Dkt. 25 (9th Cir. Jan. 25, 2025); Br. of Retail Litigation Center, *Popa v. PSP Group, LLC & Microsoft*, No. 24-14, Dkt. 41 (9th Cir. June 21, 2024). The RLC's *amicus* brief is useful to the Court and does not duplicate Defendant's submissions. Accordingly, the Court should grant the RLC's Motion.

**I. PLAINTIFFS FAIL TO DISTINGUISH THEIR CIPA ALLEGATIONS FROM THOSE DESCRIBED IN THE RLC'S PROPOSED *AMICUS* SUBMISSION**

Plaintiffs admit that this case concerns a website that allegedly contains "resources and programming scripts from third parties that enable those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data." Opp. at 2. The RLC has demonstrated that the 750-plus cases it describes in its brief include largely similar claims alleging CIPA violations based on third-party tracking technology transmitted through web browsers. *See Amicus* Br. (ECF No. 25-1) at 7–8. To skirt that key similarity, Plaintiffs place great weight on the fact that Defendant attempted, yet allegedly failed,

to allow users to stop third-party cookies from appearing on its website. Opp. at 2. Plaintiffs characterize Defendant's attempt at an opt-out mechanism as a knowing "lie," even though they allege no facts to support that assertion. *Id.* But CIPA concerns itself only with whether or not a party provides consent to a recording, not the specific mechanism for consent that is used. *See* Cal. Penal Code § 631(a). Indeed, in the one case on which Plaintiffs purport to rely, *Valenzuela v. Keurig Green Mountain, Inc.*, the court granted the defendant's motion to dismiss despite holding that the court could not take judicial notice of the defendant's linked privacy policy to establish consent under CIPA. 674 F. Supp. 3d 751, 757 (N.D. Cal. 2023).

Plaintiffs strain to distinguish their case to avoid facing the volume and breadth of filed cases and pre-suit demand letters head-on. The statistics in the RLC's *amicus* submission underscore the critical gatekeeping role courts play in deciding motions to dismiss in CIPA cases. In short, it is Plaintiffs, not the RLC or Defendant, who make "attempts at obfuscation," Opp. at 1, which the Court should reject.

## II. THE *AMICUS* BRIEF PROVIDES UNIQUE INFORMATION

Plaintiffs next attempt to cast the RLC's submission as duplicative of Defendant's moving papers on its motion to dismiss. Opp. at 3–4. It is not. The RLC does not wade into the merits of Plaintiffs' claims. Rather, it seeks to place this case into proper context case in two ways: first, that the underlying purpose of CIPA has nothing to do with the Internet-based consumer class actions for which it is used today; and second, that the wave of filed CIPA actions and threatened actions (based on cookie-cutter complaints and demand letters) has created a mechanism for plaintiffs' attorneys to inappropriately extract high dollar settlements. That isolated authority used to support those arguments overlaps with arguments made by Defendant in no way disqualifies an *amicus* submission. *See, e.g.*, *Cobell v. Norton*, 246 F. Supp. 2d 59, 62–63 (D.D.C. 2003) (rejecting argument that proposed *amicus* submission was "nothing more than a proxy brief" for a party even though there was "probably some overlap" in issues that might be addressed).

Plaintiffs also discount the legislative history that the RLC discusses in its *amicus* brief because they claim it is quoted "selectively." Opp. at 3. Not only do Plaintiffs provide no evidence for their assertion that the legislative history the RLC quotes does not represent the views of the general legislature, the RLC provided the Court with all of the materials from which it quoted.[1] *See* Declaration of Rebecca B. Durrant (ECF No. 25-2) ("Durrant Decl.") Exs. A–D; *Amicus* Br. at 9. The Court thus has all of the information necessary to determine whether the RLC fairly characterized the materials it quoted.

## III. TRADE ASSOCIATIONS LIKE THE RLC ARE QUINTESSENTIAL *AMICI*

Plaintiffs also argue that because the RLC is a trade association and is not a direct defendant in any other case, it lacks a direct interest in the adjudication of this claim and is thus not a proper *amicus*. *See* Opp. at 4–5. Plaintiffs' argument lacks any legal support and cannot possibly be the law. Otherwise, trade associations like the RLC could not act as *amici* in cases of consequence to their members. But a trade association like the RLC has legally recognized rights to protect the interests of its members: associational standing, for example, allows a trade association to challenge laws where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 345 (1977). Participating in lawsuits as *amici* accomplishes all of the same goals as associational standing. "Participation as *amicus curiae*, as opposed to becoming an intervenor, is appropriate when the party cares only about the legal principles of the case, and has no personal, legally protectable interest in the outcome of the litigation." *Russell v. Bd. of Plumbing Examiners of Cnty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) (citing Moore's Fed. Prac. Digest 3d §

---

[1] And, contrary to Plaintiffs' assertion that the Court could consider the legislative history without the RLC's participation as *amicus*, the materials attached as Exhibits were available only through special requests from the Legislative Intent Service given their age; they were not readily available. *See* Durrant Decl. Exs. A–D.

34.23). Plaintiffs seek to turn this principle on its head, requiring trade associations like the RLC to meet a standard akin to the more demanding requirement for intervention, rather than the more lenient standard that applies to limited participation in proceedings as *amicus*.

The policy consideration to which Plaintiffs point—that a proliferation of *amicus* submissions would burden the courts, *see* Opp. at 4–5—is a non-problem. There is simply no evidence that the RLC or any other trade association puts its thumb on the scale of every filed action to influence the outcome as *amicus*. Courts have significant discretion to consider *amicus* submissions that they believe might be helpful, while ignoring those that are not. *See, e.g.*, *WildEarth Guardians v. Haaland*, 561 F. Supp. 3d 890, 905 (C.D. Cal. 2021) ("[A]n individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable to the court."). Plaintiffs' attempt to cast the RLC's submission as burdensome to the Court is ironic given their contribution to the explosion of internet-based CIPA litigation burdening California courts—the very reason the RLC seeks *amicus* participation in the first place.

**CONCLUSION**

Plaintiffs fail to distinguish this case from the hundreds of CIPA cases described in the RLC's proposed submission, and otherwise present no compelling reasons that the Court should not allow the RLC to participate in these proceedings as *amicus curiae*. The information the RLC provides would be useful to the Court, and the Court should consider it.

DATED: May 27, 2025

By: */s/ Rebecca B. Durrant*

Rebecca B. Durrant (State Bar No. 350444)
rdurrant@kelleydrye.com
Glenn T. Graham (State Bar No. 338995)
ggraham@kelleydrye.com
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, CA 92037
Tel.: (212) 808-7551
Fax: (212) 808-7897

*Attorneys for The Retail Litigation Center*