**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO WALSH, HOWARD YOSHA, and ERICA MALDONADO, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOLLAR TREE STORES INC.,<br><br>Defendant. | Case No. 5:25-cv-01601-SVK<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>Date: July 29, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Susan van Keulen<br>Courtroom: San Jose, Courtroom 6 |

TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 2
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 4
A. Plaintiffs Plead a Concrete Injury-in-fact. ..... 4
B. This Court Is the Proper Venue for This Case. ..... 9
C. Dollar Tree's Scattershot 12(b)(6) Arguments Fail. ..... 10
1. Plaintiffs adequately plead their common law privacy claims. ..... 10
a. Plaintiffs allege that Dollar Tree's invasion of privacy was highly offensive. ..... 11
b. Plaintiffs allege a reasonable expectation of privacy. ..... 13
2. Plaintiffs Have Adequately Pled CIPA Claims. ..... 14
a. Plaintiffs allege "contents" were intercepted. ..... 15
b. Plaintiffs allege "aiding" under CIPA. ..... 16
c. CIPA section 638.51 is not limited to telephones. ..... 19
D. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation. ..... 20
E. Plaintiffs Have Pled Contract Damages and its Unjust Enrichment Claim May Proceed. ..... 22
F. Plaintiffs Sufficiently Plead Trespass to Chattels. ..... 24
V. LEAVE TO AMEND SHOULD BE GRANTED ..... 25
VI. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 3, 8

*Badvipour v. Blinken*,
No. 8:24-cv-01458-DOC-KES, 2024 U.S. Dist. LEXIS 243408 (C.D. Cal. Dec. 30, 2024) ............ 10

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ............ 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 3

*Beyard v. Pentagon Fed. Credit Union*,
No. 1:21-cv-01063-KJM-SAB, 2025 U.S. Dist. LEXIS 21880 (E.D. Cal. Feb. 5, 2025) ............ 10

*Briskin v. Shopify*,
No. 22-15815, 2025 U.S. App. LEXIS 9410 (9th Cir. Apr. 21, 2025) ............ 9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ............ 17

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ............ 5, 11, 13, 15

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ............ 11, 13, 14, 23

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............ 5, 6

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ............ 4

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............ 17

*D'Lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008) ............ 1

*Doe v. Amgen, Inc.*,
No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ............ 17

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............ 24

*Elation Sys., Inc. v. Fenn Bridge LLC*,
71 Cal. App. 5th 958, 286 Cal. Rptr. 3d 762 (2020) ............ 23

*Fields v. Wise Media, LLC*,
No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ............ 24

*Fischer v. Saberhagen Holdings, Inc.*,
No. C09-5385RJB, 2009 U.S. Dist. LEXIS 108128 (W.D. Wash. Nov. 19, 2009) ............ 1

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ............ 19, 20

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317, 352 (2000) .......... 23

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 12, 14

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024) .......... 15

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) .......... 12

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025) .......... 22

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 16

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Facebook Privacy Litig.*,
192 F. Supp. 3d 1053 (N.D. Cal. 2016) .......... 23

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 2, 5

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 12, 13

*In re Google Referrer Header Privacy Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) .......... 22

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935, 939–40 (N.D. Cal. 2022) .......... 23

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 12, 24

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 8, 25

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 15

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 21, 22

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003) .......... 8, 24

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 16, 17

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 5

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..................... 12, 15

*Kenyon v. W. Union Tel. Co.*,
100 Cal. 454 (1893) ..................... 22

*Kim v. McDonald's USA, LLC*,
2022 WL 4482826, 2022 U.S. Dist. LEXIS 174276 (N.D. Ill. Sept. 27, 2022) ..................... 6

*Klein v. Meta Platforms, Inc.*,
No. 20-cv-08570-JD, 2025 U.S. Dist. LEXIS 13366 (N.D. Cal. Jan. 24, 2025) ..................... 7

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565
(C.D. Cal. Sep. 3, 2024) ..................... 17

*Kumandan v. Google LLC*,
No. 19-cv-04286-BLF, 2022 U.S. Dist. LEXIS 247427 (N.D. Cal. Dec. 16, 2022) ..................... 8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..................... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ..................... 9

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427-SVK, 2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021) ..................... 8

*Medoff v. Minka Lighting, LLC*,
No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398
(C.D. Cal. May 8, 2023) ..................... 23

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ..................... 15

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378
(N.D. Cal. Dec. 12, 2024) ..................... 19, 20

*Muha v. Experian Info. Sols., Inc.*,
106 Cal. App. 5th 199 (2024) ..................... 5

*Radek Barnert v. HP, Inc.*,
No. 21-cv-05199-SVK, 2021 U.S. Dist. LEXIS 259220 (N.D. Cal. 2021) ..................... 4

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ..................... 13, 17

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ..................... 10

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ..................... 14

*Rodriguez v. Fountain9, Inc.*,
2024 WL 4905217 ..................... 6

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ..................... 11, 12

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) ..................... 7, 22

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) ..................... 13, 14

*Romo v. Stewart Title of Cal.*,
35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414 (Ct. App. 1995) ........ 22

*Ruiz v. Gap, Inc.*,
380 F. App'x 689 (9th Cir. 2010) ........ 23

*Sanders v. Am. Broad. Cos.*,
20 Cal. 4th 907 (1999) ........ 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 9

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........ 19, 20

*Shahnaz Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ........ 18

*Silver v. Stripe, Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) ........ 12

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ........ 18

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*,
120 Cal. App. 3d 412, 174 Cal. Rptr. 608 (Ct. App. 1981) ........ 22

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 1, 11, 15, 17

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) ........ 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*,
239 Cal. App. 4th 1088 (2015) ........ 9, 23

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 18

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 13

*Williams v. Pac. Sunwear of Cal. LLC*,
No. CV-24-02015-PHX-JJT, 2024 U.S. Dist. LEXIS 196954 (D. Ariz. Oct. 30, 2024) ........ 10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 2

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 15

**Statutes**

Cal. Civ. Code § 1709 ........ 30

Cal. Civ. Code § 3333 ........ 30

Cal. Civ. Code § 3360 ........ 11, 31

Cal. Penal Code § 631 ........ 22
Cal. Penal Code § 631(a) ........ 19
Cal. Penal Code § 638.50(b) ........ 26
Cal. Penal Code § 638.51 ........ 20, 26
Cal. Penal Code § 638.51(a) ........ 26
Cal. Penal Code § 638.51(b) ........ 27

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 3, 10

## I. INTRODUCTION

Plaintiffs Marco Walsh, Howard Yosha, and Erica Maldonado (collectively, "Plaintiffs") bring suit against Dollar Tree Stores Inc. ("Defendant" or "Dollar Tree") for aiding third parties to collect Plaintiffs' private information against Plaintiffs' express instructions, and in violation of Defendant's express promise to protect that information. In particular, Defendant surreptitiously placed third-party tracking cookies on Plaintiffs' devices *after* they explicitly rejected and opted out of such cookies by clicking "Reject Advertising Cookies," *see infra*. As a result, Defendant caused the third parties to collect vast swaths of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***despite explicitly. promising not to do so***. ECF No. 1 ¶ 3. This deceptive practice is a highly offensive violation of Plaintiffs' privacy rights, as well as a breach of Defendant's promises. *See, e.g., St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive).

Defendant primarily attempts to avoid liability for its blatant privacy violations by attacking Plaintiffs and their attorneys.[1] When it does address the substance of the case, it incorrectly contends that Plaintiffs lacks standing to sue because they do not allege an "injury in fact." But invasion of privacy and intrusion upon seclusion are traditionally recognized harms. Accordingly, "a concrete injury for Article III standing purposes occurs when [any third party]

[1] Because it is all impertinence, misdirection and inuendo, Plaintiffs have not wasted space refuting Dollar Tree's attacks on Plaintiffs and their counsel. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (stating court must be cognizant that "[t]he attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny."). If the Court is interested, Plaintiffs and their counsel will happily discuss who did what and when in a separate filing or at the hearing. *See, e.g., Fischer v. Saberhagen Holdings, Inc.*, No. C09-5385RJB, 2009 U.S. Dist. LEXIS 108128, at *3 (W.D. Wash. Nov. 19, 2009) (noting that the briefing on a motion was marked by *ad hominem* attacks by both counsel on the motives and litigation strategy of the other and reminding the parties that such attacks are not helpful and briefing should be much less *ad hominem* and limited to *ad lex, ad facta,* and *ad facta juridicum*).

*tracks* a person's internet browser activity without authorization." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). Moreover, CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (quoting *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)).

The remainder of Defendant's arguments are easily be dispensed with. The Complaint adequately alleges that Defendant owns and operates the Website, installed third-party resources that shared private user data with those third parties, promised to turn those resources off, and then did not do so. ECF No. 1 ¶¶ 16–22. Those are all intentional acts. Defendant's argument that its conduct was not "highly offensive" is based on the same outdated law as its standing arguments, and fails for the same reason. Defendant's arguments that Plaintiffs' fraud and breach of contract claims require "actual damages" are similarly based on old law that has been overruled and/or distinguished from the claims asserted here. Finally, it fails to grapple with the fact that the Complaint alleges interception of both contents and record information.

This Court should deny Dollar Tree's motion in its entirety.

## II. STATEMENT OF FACTS

When consumers visit Defendant's ecommerce websites (www.dollartree.com and www.familydollar.com, each a "Website" and collectively, the "Websites"), Defendant displays to them a popup cookie consent banner in which it offers Website users the option to "Reject Advertising Cookies." The following screenshot is the popup cookie consent banner displayed to users of the Dollar Tree Website:




ECF No. 1 ¶ 1. An identical cookie consent banner is displayed on the Family Dollar Website. *Id.* ¶ 26. Defendant's Privacy Policy again represented that California users of the Websites could reject advertising cookies by "adjusting your preferences regarding the categories of Cookies" Defendant uses. *Id.* ¶ 37.

Despite its repeated representations that it would not use cookies or share user information with third parties if users of the Websites clicked the "Reject Advertising Cookies" button, Defendant immediately caused the installation of several cookies from third parties—including Google LLC (DoubleClick and Google Analytics cookies), Meta Platforms, Inc. (Facebook cookies), Microsoft Corporation (Bing cookies), Epsilon Data Management, LLC (Dotomi cookies), Pinterest, Inc. (Pinterest cookies), and more (collectively, the "Third Parties"). ECF No. 1 ¶¶ 30, 79–81, 87–89, 95–97. Defendant thereby caused the collection and dissemination of users' personal information "including their browsing history, visit history, Website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively "Private Communications"). ECF No. 1 ¶ 28; *see id.* ¶¶ 20, 30. This resulted in not only the disclosure of Website users' computer data such as IP and email addresses; but specific user communications such as search queries and search strings made on the Websites. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 38–75. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid by clicking "Reject Advertising Cookies."

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact.

To have standing under Article III, Plaintiffs must allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Intangible harms may still be concrete. *See id.* (discussing deprivations of rights as concrete). Examples of concrete but intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," and such harms have been "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In addition, "state law can create interests that support standing in federal courts." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)); *see Radek Barnert v. HP, Inc.*, No. 21-cv-05199-SVK, 2021 U.S. Dist. LEXIS 259220, at *18–19 (N.D. Cal. 2021) (van Keulen, Mag. J.) ("At the same time, it is well established that the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.")).

Here, Plaintiffs allege they suffered actual harm when Defendant represented that they could opt out of (or REJECT) being tracked with the use of advertising cookies on the Website; but Defendant still caused the Website to place Third Party advertising cookies on their devices which allowed them to collect their Private Communications. ECF No. 1 ¶¶ 20, 28–30. The Ninth Circuit has recognized that similar privacy claims are concrete. In *In re Facebook Inc. Internet Tracking Litig.*, the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." 956 F.3d at 602–03. Similarly, "legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these *historical privacy rights* when they passed the Wiretap Act, SCA, and CIPA." *Id.* at 599 (emphasis added). Accordingly, control of personally identifiable browsing history, including likes and dislikes, is a "concrete" interest that creates standing for privacy-related claims. *Id.*; *see also Campbell v.*

*Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, *tracks* a person's internet browser activity without authorization.").

When a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 924-25 (N.D. Cal. 2023) (collection of users' private browsing data without their consent is sufficient to confer standing); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact…") (brackets removed). And Plaintiffs have also alleged a breach of contract, which is itself sufficient to confer standing. *See Brown*, 685 F. Supp. 3d at 923.

Defendant's reliance on *Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199 (2024) is misplaced. ECF No. 18 at 11. There, the court held that standing under the Fair Credit Reporting Act required an adverse effect and the defendant's failure "to include one required disclosure," could not support standing under California law. *Id.* at 209. But here, Defendant's privacy violation is not based on "one required disclosure," instead, it is based on Defendant's express representation that users of the Websites, like Plaintiffs, could "Reject Advertising Cookies." This false representation led Plaintiffs and other users of the Websites to surrender more data than they otherwise bargained for and enabled the Third Parties to access and monetize *large swaths* of their data and Private Communications. Plaintiffs have alleged several injuries, including breach of contract and the invasion of their privacy, which go far beyond the mere failure to provide a generic, statutorily required disclosure that was at issue in *Muha*. ECF No. 1 ¶¶ 117–119, 127–129, 147–149, 159–160, 171–172, 181, 190, 200–201, 205–206. For this reason, Defendant's reliance on *Rodriguez v. Fountain9, Inc.* also fails because Plaintiffs' claims are not "solely premised on statutory damages under CIPA." 2024 WL 4905217, at *4.

Defendant argues that Plaintiffs have no standing because "Plaintiffs fail to allege that their sensitive personal information was disclosed to third parties" and that "browsing history, visit history, Website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" is "non-sensitive personal information" ECF No. 18 at 12. There is no such requirement. Even if there was, Defendant explicitly acknowledges that Plaintiffs have alleged specific categories of data which were allowed to be collected by the Third Parties without their consent. ECF No. 1 ¶¶ 20, 28–30; *see also id*. ¶¶ 38–75 (explaining breadth of data collected by Third Parties). The Ninth Circuit has recognized these categories of information as protected under California privacy statutes. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 596 (holding that plaintiffs had standing under CIPA for privacy violations when they alleged their URLs and IP addresses were collected and used without consent); *Campbell*, 951 F.3d at 1119 (holding that plaintiffs had standing under CIPA for privacy violations when they alleged their URLs were collected and used without consent).

Instead of applying the Ninth Circuit's decisions in *In re Facebook Inc. Internet Tracking* and *Campbell*, Defendant relies on an out-of-circuit case applying Illinois law: *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, 2022 U.S. Dist. LEXIS 174276 (N.D. Ill. Sept. 27, 2022). ECF No. 18 at 12. As an initial matter, California law is binding in this case, not Illinois law, and the Ninth Circuit has spoken. Even so, Defendant's cherry-picked quote from *Kim* cannot save it. In *Kim*, the plaintiffs sued defendant as a result of a data breach which exposed their email addresses, phone numbers, and delivery addresses. *Id.* at *10–11. The plaintiffs did not argue they were injured by virtue of the data breach alone; instead, they argued the theft of their email addresses, phone numbers, and delivery addresses placed them at an increased risk of identity theft in the future. *Id.* at *11–12. Following the Supreme Court's decision in *Transunion*, the court held that "future disclosure was too speculative to constitute a concrete injury-in-fact in a claim for damages." *Id.* That is a far cry from the facts of this case where Defendant explicitly promised that users of its Websites could "Reject Advertising Cookies," but that was an outright lie. Not once does Defendant deny this; hence the preoccupation with ad hominem attacks.

Defendant next argues that Plaintiffs "purported diminution in value of private and personal information and communications does *not* confer standing." ECF No. 18 at 12. But Defendant conflates standing and damages. Defendant's concrete invasions of Plaintiffs' privacy and contractual rights are cognizable injuries which confers standing; valuing those injuries is different. Diminution in value is but one method for calculating Plaintiffs' injuries. *See* ECF No. 1 ¶¶ 118, 128, 148, 160, 181, 189–190, 200–201, 206. This is sufficient for standing. *See, e.g., Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting motion for class certification when plaintiffs' damages were based on a "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

Defendant claims that "[t]he Northern District of California recently rejected the argument that the value of private communications can be quantified for standing purposes." ECF No. 18 at 12 (citing *Klein v. Meta Platforms, Inc.*, No. 20-cv-08570-JD, 2025 U.S. Dist. LEXIS 13366, at *11–12 (N.D. Cal. Jan. 24, 2025)). But *Klein* is readily distinguishable and made no finding on the value of private communications. In *Klein*, the plaintiffs claimed antitrust violations and argued that defendant would have paid Facebook users for their data, but for the antitrust violations. 2025 U.S. Dist. LEXIS 13366, at *14–16. Based on the evidentiary record, the court rejected plaintiffs' expert's assumption that "Facebook would choose to compete on price instead of quality in the but-for world to avoid losing users." *Id.* at *21–22. The court, however, made no finding as to the value of plaintiffs' data. In fact, *Klein* supports denying Defendant's motion to dismiss because the evidence in that case shows there that companies value data which they cannot typically collect. *Id.* at *29 (discussing defendant's "internal discussions of paying users" which involved "payments to individuals for additional data"). Here too, the Third Parties would not have been able to collect the Private Communications absent Defendant's false representation that users could "Reject Advertising Cookies."

Defendant next claims that "[w]hile Plaintiffs contend that the storage of cookies interfered with the use of their devices, they do not allege *how* they supposedly did so." ECF No. 18 at 12–13 (emphasis in original). Defendant is wrong. Plaintiffs allege that Defendant's

conduct constituted a trespass and that the cookies reduced the function, performance, storage, and value of Plaintiffs' devices. ECF No. 1 ¶ 206. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels); *see In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"). Defendant's reliance on *Intel Corp. v. Hamidi* is misplaced because, as noted by the *In re Meta Healthcare* court, "cookies remain on users' devices and continue to use storage and resources," which supports a trespass to chattels claim. 713 F. Supp. 3d at 658–659.[2]

Finally, Defendant argues that Plaintiffs lack standing because "to establish an implied contract in the data privacy context, they must at least allege consideration." ECF No. 18 at 13. But Plaintiffs do not allege an implied contract. Rather, they allege an express contract from the Privacy Policy, the breach of which caused them to surrender more of their data than they otherwise bargained for. ECF No. 1 ¶¶ 183–190. Numerous courts have allowed similar claims to proceed. *Kumandan v. Google LLC*, No. 19-cv-04286-BLF, 2022 U.S. Dist. LEXIS 247427, at *38 (N.D. Cal. Dec. 16, 2022) (certifying class for breach of contract claims based on violations of Terms of Service and Privacy Policy); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 U.S. Dist. LEXIS 24180, at *36–37 (N.D. Cal. Feb. 2, 2021) ("Plaintiff adequately alleges the parties entered into a contract, agreeing to abide by Defendant's TOS, which includes the Privacy Policy."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (Privacy Policy supported breach of contract claim). Moreover, California law expressly authorizes nominal damages for breach of contract claims. Cal. Civ. Code § 3360 ("[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover

[2] This Court must reject Defendant's attempt to rely on unauthenticated websites such as its citation to "us.norton.com." ECF No. 18 at 13. Plaintiffs dispute Defendant's mischaracterization of cookies. Moreover, at the pleading stage, the Court is limited to the four corners of the Complaint and the Court must accept all material allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiffs. *Iqbal*, 556 U.S. at 678.

nominal damages."); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 n.12 (2015).

**B. This Court Is the Proper Venue for This Case.**

Plaintiffs have adequately pled specific personal jurisdiction over Defendant. As recently clarified by the Ninth Circuit *en banc*, the applicable test boils down to whether (1) Defendant purposefully directed its activities at the forum or purposely availed itself of the privilege of conducting activities in the forum; (2) Plaintiffs' claims arise out of or relate to that conduct; and (3) exercising jurisdiction over Defendant would be reasonable, i.e., comport with fair play and substantial justice. *Briskin v. Shopify*, No. 22-15815, 2025 U.S. App. LEXIS 9410, at *35–36 (9th Cir. Apr. 21, 2025).[3] Because Defendant's personal jurisdiction challenge is based on written materials rather than an evidentiary hearing, Plaintiffs need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

The Complaint shows "***purposeful availment.***" "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The focus is on Defendant's conduct, not Plaintiffs' conduct, as Defendant contends. *Id.*; *see* ECF No. 18 at 15. The Complaint alleges that Defendant's Websites (and thus Defendant) allow shopping for products throughout California, and that Defendant promised not to use third-party advertising cookies to induce consumers to view those products. Moreover, Defendant owns and operates retail locations across California and it has agreements with other California businesses to take advantage of California real estate, markets, and laws. Defendant also admits that it uses California users' data for advertising efforts. ECF No. 1 ¶¶ 24–25. This establishes purposeful availment. *See Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1219–1220 (C.D.

---

[3] Some district courts have analyzed "purposeful availment" only for contract-based claims, while reserving the "purposeful direction" test for tort-based claims. But the Ninth Circuit in *Briskin* clarified that there is no "rigid dividing line" between the two tests, and that personal jurisdiction for any claim may be satisfied by either test or "by some combination thereof." *Id.* at *22, n.10.

Cal. 2024) (finding personal jurisdiction over website operator who collected California user data to drive sales); *Williams v. Pac. Sunwear of Cal. LLC*, No. CV-24-02015-PHX-JJT, 2024 U.S. Dist. LEXIS 196954, at *24–25 (D. Ariz. Oct. 30, 2024) (same for digital surveillance, noting "[a] defendant cannot commit an intentional tort in a forum and then claim that the location of his victim renders jurisdiction in the forum fortuitous.").

Defendant argues that "Plaintiffs' Yosha and Maldonado's claims have *no connection whatsoever* to this district." ECF No. 18 at 15. But Plaintiff Walsh has already established that he resides in the Northern District of California and accessed the Website from there. ECF No. 1 ¶¶ 6, 76–83. And district courts routinely allow multi-plaintiff cases to proceed once one plaintiff has shown venue is proper. *Badvipour v. Blinken*, No. 8:24-cv-01458-DOC-KES, 2024 U.S. Dist. LEXIS 243408, at *17 (C.D. Cal. Dec. 30, 2024).

Moreover, "the 'pendent venue' doctrine permits a district court to adjudicate claims that fall short of the venue requirements in § 1391(b) if other claims in the case do not meet those requirements, provided that 'doing so is justified by principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants." *Beyard v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-KJM-SAB, 2025 U.S. Dist. LEXIS 21880, at *13–14 (E.D. Cal. Feb. 5, 2025). Here, there is no doubt that it is more efficient to allow Plaintiffs Yosha's and Maldonado's claims to proceed with Plaintiff Walsh's. There is no reason to transfer Plaintiff Yosha and Plaintiff Maldonado's claims to the Eastern District of Virginia, when they have never stepped into that state and never agreed to the Terms on the Website. In reality, proper venue for Plaintiff Yosha and Plaintiff Maldonado would be other districts in California and allowing their claims to proceed here avoids piecemeal litigation and conflicting decisions between this district and another.

### C. Dollar Tree's Scattershot 12(b)(6) Arguments Fail.

#### 1. Plaintiffs adequately plead their common law privacy claims.

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion

must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs easily satisfies both requirements.

**a. Plaintiffs allege that Dollar Tree's invasion of privacy was highly offensive.**

Defendant's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) (denying motion to dismiss claims for intrusion upon seclusion and invasion of privacy where plaintiffs alleged that "Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries . . .'"); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced).

Ignoring its fake promise, Defendant asserts that none of the alleged information "is highly offensive" and it is "routinely collected by websites across the internet." ECF No. 18 at 17. But telling consumers one thing and then turning around and doing the opposite can hardly be described as "routine," particularly when it comes to tracking users' when they were expressly promised they would not be tracked. *See Brown*, 685 F. Supp. 3d at 937–42 (denying summary judgment, finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode, and holding that there was a triable issue as to whether defendant's intrusion was highly offensive).

Defendant relies on long outdated cases, including *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) and *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), but more recent cases, such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (discussed *supra*), have overruled those older cases. Under current law, the "use of cookies to track and compile internet browsing histories" can invade users'

privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603. Thus, recent district court decisions have recognized that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

Plaintiffs have alleged that Defendant allows the Third Parties to collect similar data when it expressly promised it would not. ECF No. 1 ¶ 20 (describing "Private Communications" to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data). This is highly offensive.

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

**b. Plaintiffs allege a reasonable expectation of privacy.**

Next, Defendant claims that Plaintiffs "cannot allege that they had a reasonable expectation of privacy" in the alleged categories of information. ECF No. 18 at 17–18. But that ignores both the allegations and the applicable law. Courts recognize that there is no blanket rule that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019, at *4–6 (S.D. Cal. May 8, 2024). Indeed, Defendant completely misses what separates this case from the cases it cites: its ***own representation*** that users could browse the Website without being tracked—i.e., they could "REJECT ADVERTIISNG COOKIES." That fact is outcome-determinative since "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Id*. (citing *In re Facebook*, 956 F.3d at 601–03); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238, at *17–19 (N.D. Cal. Jan. 7, 2025) (denying Google motion for summary judgment because representing that it would not save data and saving it created a disputed issue of material fact on whether there was a reasonable expectation of privacy); *Brown*, 685 F. Supp. 3d at 937–41 (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun*, 526 F.Supp.3d at 630 (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig*., 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 129, 151 (3d Cir. 2015) (holding that users maintained a reasonable expectation of privacy in their browsing histories when Google tracked URLs after the users denied consent for such tracking).

Here, Defendant set Plaintiffs' reasonable expectation ***itself*** when it stated they (and all other users) could "**Reject Advertising Cookies**" cookies. It simply duped them. Defendant further misrepresented Plaintiffs' right to opt out of cookies in its Privacy Policy. Plaintiffs, who clicked "Reject Advertising Cookies," of course, had a reasonable expectation of privacy in their

activities on the Dollar Tree Website based on, at a minimum, those representations. *See Rodriguez v. Google*, 2025 U.S. Dist. LEXIS 3238, at *18–19.

To illustrate, imagine a store with a sign on the door stating that it had surveillance cameras from third-parties inside. The sign on the door also had two buttons: one that, if pressed, shoppers would consent to the surveillance, and another in which shoppers could decline the surveillance. The scenario here is akin to the store allowing third-parties to surveil shoppers *who affirmatively pressed the button declining the surveillance*. In such a scenario, the store, like Defendant here, set the expectation itself—through its own representations—that shoppers would not be surveilled if they opted out. As the California Supreme Court explained, "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 916 (1999). Plaintiffs here did not consent to give ***any*** third-parties access to their information for tracking or marketing purposes. Defendant plainly violated norms when it failed to honor that express rejection. *See Brown*, 685 F. Supp. 3d at 926–28; *Calhoun*, 526 F.Supp.3d at 630; *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (consumer had a reasonable expectation in location data that a weather app shared with third parties).

### 2. Plaintiffs Have Adequately Pled CIPA Claims.

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up); *see* ECF No. 1 No. ¶¶ 130–149. Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." ECF No. 1 ¶¶ 150–160. Defendant's challenges to these claims are meritless.

**a. Plaintiffs allege "contents" were intercepted.**

CIPA prohibits interception of "contents" communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege interception of "contents," including user input data. *See* ECF No. 1 ¶ 143 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data"); *id.* ¶ 20 ("user input data" includes "search queries, the user's name, age, gender, email address, location, and/or payment information").

Even the cases Defendant cites do not support dismissal. ECF No. 18 at 18–19. In *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), the plaintiffs alleged only that record information was captured, such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." In *Katz-Lacabe*, the court denied the motion to dismiss, finding that plaintiff adequately pled "contents" because they alleged URLs and data entered into forms were intercepted. 668 F. Supp. 3d at 944–945. Here, Plaintiffs allege browsing history, website interactions, and user input data such as search strings were intercepted. Those searches constitute "contents" of information. *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content"). Should the Court find it necessary, Plaintiffs can amend to include

additional allegations about the types of content transmitted to the Third Parties.

**b. Plaintiffs allege "aiding" under CIPA.**

Defendant next argues that Plaintiffs "failed to allege that Dollar Tree itself intercepted their communications" and that it "is the intended recipient . . . and cannot be held liable for wiretapping." ECF No. 18 at 18–19. But as explained above, Plaintiffs allege that Defendant is liable under the fourth prong of Section 631(a) which merely requires that Defendant aid the Third Parties. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023) (holding that privacy claims could survive when plaintiffs alleged a third-party intercepted "specific web pages viewed, search terms entered, and purchase behavior."). Thus, Plaintiffs are not arguing that Defendant is "directly liable for wiretapping;" instead, Defendant is liable under the statute for aiding the Third Parties to collect Website users' Private Communications against their express consent.

Defendant next claims that Plaintiffs CIPA claims fail because "Plaintiffs 'must sufficiently plead a violation . . . of one of [CIPA's] first three clauses." ECF No. 18 at 19. But Defendant places form over function. While perhaps not laid out in an element-by-element format, the Complaint clearly alleges CIPA violations by the Third Parties named in the Complaint. *See* ECF No. 1 ¶¶ 2–5, 38–70 (identifying unconsented wiretapping via cookies placed by Google, Meta Platforms, Microsoft, "and others"); *id.* ¶¶ 2–5, 14–23; *see also id.* ¶¶ 38–341, 52–54, 59–60, 66–70; 141–144 (Third parties made an intentional tap or unauthorized connection); *id.* ¶¶ 38–39; 52–54, 59–60, 66–70, 137–138 (with any line, cable, or instrument—i.e., cookies in internet communications); *id.* ¶¶ 26–36, 142 (willfully and without consent of all parties); *id.* ¶¶ 41, 57, 70, 143 (reads or learns the contents of any communication while in transit); *id.* ¶¶ 38–70, 144 (uses any information so obtained).

Defendant next argues that "[i]ntent is required, and Plaintiffs have not shown Dollar Tree had any intent to wiretap." ECF No. 18 at 19. But the plain text of CIPA "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen rejected this same argument in *James v. Walt Disney*. In *James*, the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including

"search terms entered," "pages viewed," and other data similar to the allegations here. 701 F. Supp. 3d at 945–46. Like here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiffs allege that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. ECF No. 1 ¶¶ 16, 38–75.

The decision in *James* is consistent with other recent decisions from this Circuit holding that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc*., No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant specifically intended to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519,

at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)).

Defendant's reliance on *Smith v. Yeti Coolers, LLC* is misplaced. ECF No. 18 at 19. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its website. Here, Plaintiffs have alleged that Defendant integrated the third-party resources on the Website, which placed and transmitted cookies *in order* to obtain user data for advertising purposes. ECF No. 1 ¶¶ 16, 20–23, 38–70. Defendant did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained users' express rejection of such cookies. *Id.* ¶¶ 1–3. Defendant cannot plausibly claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Private Communications; it integrated the Third Party code into its Website to do exactly that.

Moreover, Defendant's characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like Defendant does here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs alleges more than "some" level of intent and knowledge (as explained above) because Defendant owns the Websites and installed the third-party resources which allowed the Third Parties to track the Website users.

**c. CIPA section 638.51 is not limited to telephones.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this claim. Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information."

Defendant argues "Plaintiffs cannot state a claim under CIPA § 638.51 because website cookies and related code are not pen registers." ECF No. 18 at 19–20. But courts in this District have repeatedly rejected this argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with

the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* ECF No. 1 ¶ 155 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information"). Thus, Defendant's argument limiting pen register claims to telephones fails.

Defendant claims Plaintiffs "cannot have it both ways: either they allege that the communications intercepted have 'contents' under § 631(a) or they allege that no 'contents' are intercepted by the statutory definition of a pen register." ECF No. 18 at 20. But it is Defendant who attempts to "have it both ways." Defendant fails to recognize that some cookies may include "content," while others may include only "record" information. *See, e.g.*, ECF No 1 ¶¶ 38–70 (identifying different types of information collected by different cookies). Indeed, Defendant specifically concedes that "Plaintiffs allege that many type of 'record information'" was transmitted to the Third Parties. ECF No. 18 at 18. Thus, the Complaint here properly pleads that certain cookies contain "contents" while others contain "record information." There is no inconsistency. Even so, Plaintiffs can plead these claims in the alternative.

**D. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation.**

Despite Dollar Tree's assertion to the contrary (ECF No. 18 at 21), Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. They allege that Defendant (who), allowed the Third Parties to collect Website users' Private Communications despite promising they could "Reject Advertising Cookies" (what), when users visited Defendant's Websites and clicked "Reject Advertising Cookies" (when and where), and by integrating its Websites with Third Party resources, including cookies (how). *See, e.g.*, ECF No. 1 ¶¶ 1–5, 26–36, 76–99, 161–172 (alleging fraud); ¶¶ 26–36, 80, 88, 96, 163–164 (alleging

intentional conduct); ¶¶ 79, 87, 95, 165, 170–171 (alleging reliance); ¶¶ 81, 89, 97, 166–167, 171–172 (alleging injury). This is clearly sufficient.

Defendant claims that Plaintiffs "offer no explanation on how the purported misrepresentations were known exclusively to Dollar Tree, or how Dollar Tree purportedly concealed the misrepresentations." ECF No. 18 at 18. But Plaintiffs have done exactly that. Plaintiffs allege that Defendant owns and operates the Websites and chose to install the Third Party resources on the Websites. ECF No. 1 ¶¶ 22–23. Plaintiffs also allege that Defendant knew or should have known "how the Websites functioned, including the Third Party's resources it installed on the Websites and the third-party cookies in use on the Websites, through testing the Websites, evaluating its performance metrics by means of its accounts with the Third Parties." ECF No. 1 ¶ 164. Defendant cannot plausibly claim it does not know how its Websites operate when it uses them to carry out thousands of business transactions every day.

Defendant next argues that "Plaintiffs do not explain what specific testing or evaluation was performed or should have been performed, or how those tests or evaluations would have led Dollar Tree to know of the purported misrepresentations in Dollar Tree's cookie consent banner." ECF No. 18 at 21. But this borders on absurdity. It is not Plaintiffs' burden to show how Defendant could have tested its Websites to ensure it was honoring *its own promise* that users could "Reject Advertising Cookies." In any event, any testing regarding the operation of the Websites and how Defendant could have configured the Websites to ensure it was not transmitting user information when users clicked "Reject Advertising Cookies" will be the subject of discovery and, more likely, expert evidence and testimony.

With respect to fraud, deceit, and misrepresentation damages, California law differentiates between fraud involving purchase of an item and fraud that does not. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) (holding California law does not apply to deceit claim arising from free email service). The California Court of Appeal has ruled that, for the tort of deceit, "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333," which provides broad relief for any harm. *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d at 1135 (citing

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 417 (Ct. App. 1981) and *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 1619 (Ct. App. 1995))). California Civil Code § 1709 permits recovery of "any damage which [the plaintiff] thereby suffers." Similarly, California Civil Code § 3333 instructs that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Thus, Plaintiffs' damages will be the subject of expert evidence.

Defendant relies on *Hubbard v. Google* and argues that "courts reject [] bare assertions [of damages] because they cannot support a reasonable inference that the value of such information was reduced, or that there was a loss of some privacy interest." ECF No. 18 at 22. However, *Hubbard* is easily distinguishable because the plaintiff there "confirm[ed] that the sole loss they allege stems from the diminution in value of their information." No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588, at *41 (N.D. Cal. Jan. 13, 2025). Here, Plaintiffs have identified several theories of recovery. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

### E. Plaintiffs Have Pled Contract Damages and its Unjust Enrichment Claim May Proceed

Under California law, "[t]he failure to perform a duty required by contract is a legal wrong, independently of actual damage sustained by the party to whom performance is due." *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010 (N.D. Cal. 2020) (citing *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458 (1893)). In other words, Defendant's breach of contract is an independent basis for damages. Additionally, California law expressly authorizes nominal damages for breach of contract claims. Cal. Civ. Code § 3360 ("[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 n.12

(2015). Indeed, California Courts have rejected *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010), the case Defendant cites as authority for the proposition that nominal damages are not available (ECF No. 18 at 22). *See Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965–967 (2020) (rejecting reasoning of *Ruiz* and confirming that that nominal damages may be awarded in contract cases under California law); *Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398, at *1 (C.D. Cal. May 8, 2023) (same); *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016) (same).

Defendant argues that Plaintiffs breach of contract claim fails because they "do not allege that they paid to browse the Website." ECF No. 18 at 23. But numerous courts have found that being caused to surrender more data without consent supports a breach of contract claim. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084–85 (N.D. Cal. 2023) (allowing breach of contract claims to proceed against defendant for collecting communications off-site without consent); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 939–40 (N.D. Cal. 2022) (same).

Defendant next argues the "breach of implied covenant of good faith and fair dealing is duplicative of the breach of contract claim and should be dismissed." ECF No. 18 at 23. But breach of implied covenant is not duplicative of a breach of contract claim and survives when a plaintiff alleges that the defendant acted in bad faith. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 352 (2000). Here, Plaintiffs allege Defendant's bad faith in seeking consent from users of its Websites to place advertising cookies and still tracking them despite their express rejection. *Calhoun*, 526 F. Supp. 3d at 634 (denying dismissal of breach of implied covenant claim where "Plaintiffs allege not only that Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers."). Furthermore, as discussed above, Plaintiffs seek different remedies for each claim, since damages for breach of the implied covenant of good faith are provided under different sections of California code. Because these claims are plead in the alternative and provide different remedies, they are not duplicative.

Finally, Defendant contends that Plaintiffs' unjust enrichment claim is barred "because Plaintiffs already allege the existence of a purported contract—the Dollar Tree Privacy Policy—and breach of that contract." ECF No. 18 at 23. Defendant again seeks to have it "both ways." It argues there is no express contract or consideration such that the breach of contract claim must be dismissed, while also arguing the unjust enrichment must be dismissed because Plaintiffs allege an express contract and a breach. But Defendant does not argue that Plaintiffs' unjust enrichment is not adequately pled; thus, the Court must maintain the unjust enrichment claim if it dismisses the breach of contract claim. Moreover, pleading in the alternative is allowed.

**F. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012).

The Complaint here pleads trespass to chattels. As explained above, Plaintiffs have adequately alleged that Defendant intentionally caused cookies to be placed on their computers and/or devices. *See* ECF No. 1 ¶¶ 16-17, 19, 23, 29-30, 33, 35-36, 203. Indeed, Defendant admits that it intentionally causes third-party cookies to be placed on Website users' devices. *Id.* ¶¶ 24–25. And Plaintiffs have adequately alleged they clicked "Reject Advertising Cookies." *Id.* ¶¶ 27, 78–79, 86–87, 94–95.

Defendant argues that Plaintiffs' allegations do not "satisfy the interference requirement" and "Plaintiffs' have not shown any significant reduction in service." ECF No. 18 at 24. However, Defendant's conduct interferes with Plaintiffs' computers' security, which is an important and

intended function of those systems. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels). Just as breaking open a safe would constitute a trespass to chattels by interfering with that safe's function, placing tracking cookies on a user's computer interferes with that computer's ability to function as its owner intends. The cookies also interfere with the function of Plaintiffs' computers by taking up storage space. *See* ECF No. 1 ¶ 207; *see In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices").

## V. LEAVE TO AMEND SHOULD BE GRANTED

Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: June 10, 2025

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*