1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 MARCO WALSH, et al.,

8                    Plaintiffs,

9            v.

10 DOLLAR TREE STORES, INC.,

11                    Defendant.

Case No.  25-cv-01601-SVK

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER AND GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**

Re: Dkt. Nos. 17, 18

12        Plaintiffs Marco Walsh, Howard Yosha and Erica Maldonado (the "Named Plaintiffs")

13 bring this class-action suit on behalf of all others similarly situated (collectively, "Plaintiffs")

14 against Defendant Dollar Tree Stores, Inc. ("Dollar Tree").  Now before the Court are Dollar

15 Tree's motions:  (1) to transfer this case to the Eastern District of Virginia and (2) to dismiss all

16 claims for lack of standing, improper venue as to two of the three Named Plaintiffs and failure to

17 state a claim.  Dkts. 17-18, respectively.  Plaintiffs oppose the motions.  Dkts. 35, 37.  Both Parties

18 have also filed various requests for judicial notice and oppositions thereto.  Dkts. 19, 34, 35-1.

19 Additionally, the Court has heard from *amicus curiae*, the Retail Litigation Center ("RLC") in

20 support of Dollar Tree's motion to dismiss.  Dkt. 29.  Having considered the submissions, the oral

21 arguments at the hearing on August 26, 2025, the relevant law and the record in this action, the

22 Court **DENIES** Dollar Tree's motion to transfer and **GRANTS IN PART** and **DENIES IN**

23 **PART** its motion to dismiss.

24 ////

25 ////

26 ////

27 ////

28 ////

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    THE PARTIES' REQUESTS FOR JUDICIAL NOTICE AND OTHER EVIDENCE

This Order concerns Dollar Tree's motion to transfer venue and motion to dismiss. Accordingly, the facts relevant to this Order, described in the Background section below, are drawn principally from Plaintiffs' complaint (Dkt. 1 ("Complaint" or "Compl.")).  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (On a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.");  *All-Tex, Inc. v. Aramsco, Inc.*, No. 18-cv00410-DSF (EX), 2018 WL 11473762, at *1 (C.D. Cal. Mar. 14, 2018) ("In determining whether to grant a motion to transfer venue, 'uncontroverted allegations in [a] plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the] plaintiff's favor.'" (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), *abrogated on other grounds, see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (explaining the impact of *Walden v. Fiore*, 571 U.S. 277 (2014)))).  With regard to the motion to transfer only, the Court also considers information contained in the Parties' affidavits.  *See All-Tex*, *Inc.*, 2018 WL 11473762, at *1.

Finally, "judicial notice and incorporation-by-reference [also] have roles to play at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Accordingly, the Court considers and resolves the Parties' requests for judicial notice, and other submission of evidence, as follows.

### A.    Dollar Tree's Requests and Evidence

First, Dollar Tree requests the Court take judicial notice of its privacy policy, (Dkt. 19-1, Ex. 1 ("Privacy Policy")), and its website terms and conditions, (*see* Dkt. 19-1, Ex. 2 (the "T&C")).  Plaintiffs oppose, arguing that the agreements introduced by Dollar Tree are not the versions Plaintiffs encountered (if at all), such that they:  (1) cause a dispute of fact as to whether they are binding;  (2) are irrelevant;  and (3) are not incorporated into the Complaint.  Dkt. 34 at 4-6.  The Court disagrees.  Plaintiffs' Complaint alleges that "Plaintiff Walsh visited the Dollar Tree Website to browse information about Dollar Tree's products" in or around "January 2025." Compl., ¶ 76.  Thus, the January 1, 2025 version of the Privacy Policy submitted by dollar tree is

1   the relevant version at least as to Plaintiff Walsh, and so is relevant to the potential class of

2   Plaintiffs.  The T&C, dated August 23, 2024, is similarly the correct version – although Plaintiffs

3   dispute whether they were bound by the terms in the first place.  Moreover, the Privacy Policy is

4   incorporated by reference in the Complaint, forming the basis of at least Plaintiff Walsh's claim

5   for breach of contract.  Compl., ¶¶ 24, 37, 185.  Plaintiffs do not challenge the authenticity of the

6   documents.  *See* Dkt. 34.  Accordingly, the Court finds the contents of the agreements "can be

7   accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

8   *See* Dkt. 19-1, ¶¶ 14-15.  The Court **GRANTS** Dollar Tree's request to take judicial notice of the

9   agreements for the content of the terms stated therein.  *See* Dkt. 19.

10      Second, Dollar Tree requests this Court judicially notice Dkt. 19-1, Ex. 3, a screenshot of

11  Dollar Tree's website showing hyperlinks to the Privacy Policy and T&C.  For the same reasons

12  as above, and additionally because Plaintiffs do *not* oppose notice of this exhibit, the Court

13  **GRANTS** Dollar Tree's request, taking judicial notice of hyperlinks to the Privacy Policy and

14  T&C that are available at the bottom of Dollar Tree's website.

15      Dollar Tree's other requests for judicial notice, (*see* Dkts. 19-20 (exhibits 1-9 to the Pak

16  Declaration)) are **DENIED WITHOUT PREJUDICE**, as the Court does not consider these

17  documents in its analysis.

18      Finally, Dollar Tree has submitted the declaration of Daniel Bowman, its Director of

19  Digital Operations, in support of both motions.  Dkt. 19-1.  In addition to attaching the above

20  exhibits, Mr. Bowman avers to various facts relating to the location of Dollar Tree, its current and

21  former employees and third party OneTrust.  *Id.*, ¶¶ 5-13.  While the Court takes notice of the

22  Privacy Policy, T&C and website screenshot as relevant to both pending motions, it considers the

23  substance of Mr. Bowman's declaration itself *only* with regard to the motion to transfer.

24      **B.      Plaintiffs' Submitted Evidence**

25      Plaintiffs submit two documents in support of their opposition to the motion to transfer.

26  The first is a screenshot of Dollar Tree's a popup banner that prompts users to either "Accept

27  Advertising Cookies," "Reject Advertising Cookies" or "Manage Cookies."  Dkt. 35-2 (the

28  "Cookie Banner").  The Court notes that a substantively identical screenshot of the Cookie Banner

is included in the Complaint and that it forms the basis of some of Plaintiffs' claims. *See* Compl., ¶¶ 26-27. The Cookie Banner, including as depicted in Dkt. 35-2, is thus incorporated by reference. *See Khoja*, 899 F.3d at 1002 (documents are incorporated by reference in a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). The second is a screenshot of Dollar Tree's website which the Court declines to consider at this time.

Finally, during the hearing, Plaintiffs presented a screenshot of Dollar Tree's "Manage Cookies" popup; Dollar Tree objected to the consideration of this document as an exhibit, and the Court accepted it only as a demonstrative at that time. *See* Dkt. 53 ("Hrg. Tr.") at 16:8-23. However, Plaintiffs have quoted the entire text of the "Manage Cookies" popup in their Complaint, such that the Court—accepting well-pleaded factual allegations as true—may rely on the popup in deciding the pending motions. *See* Compl., ¶ 24. Accordingly, Dollar Tree's objection to the use of screenshot is **OVERRULED**.

## II.    BACKGROUND

Plaintiffs' nine causes of action all arise from the same basic allegation: that, despite their clicking the "Reject Advertising Cookies" button on Dollar Tree's website, Dollar Tree nonetheless caused advertising cookies to be placed on Plaintiffs' computers. *See* Compl., ¶ 1. "Cookies" are "small text files sent by a website's server to a user's web browser and stored locally on the user's device" which can be used to track, *e.g.*, a user's browsing and visit history, website interactions, user input data, shopping behavior, session information, and more. *See* Compl., ¶ 20. Cookies may be used for various purposes, including user analytics, personalization and advertising/targeting. *Id.*, ¶ 21.

Dollar Tree's website contains a popup banner that prompts users to either "Accept Advertising Cookies," "Reject Advertising Cookies" or "Manage Cookies." *Id.*, ¶¶ 26-27; *see also* Dkt. 35-2 (the "Cookie Banner"). As seen below, the webpage is dark and does not allow browsing until a selection is made:

////

////



Dkt. 35-2; Dkt. 35-1 ("Safier Decl."), ¶¶ 2-3.

The use of Dollar Tree's website involves two agreements: the Privacy Policy and the T&C. Dkt. 19-1, Exs. 2-3. As noticed by the Court, both are accessible via hyperlink at the bottom of Dollar Tree's website. Dkt. 19-1, Ex. 3. Additionally, the "Manage Cookies" option on the Cookie Banner leads to a popup which links to the Privacy Policy but not to the T&C:

United States District Court
Northern District of California

1   *See* Compl., ¶ 24.

2       Plaintiffs' nine claims may be grouped into several categories. The first and second causes

3   of action are common law privacy allegations, alleging invasion of privacy and intrusion upon

4   seclusion (the "privacy claims"). Compl. at 40-44. The third and fourth causes of action are

5   statutory privacy claims based upon provisions of the California Invasion of Privacy Act ("CIPA")

6   (the "CIPA claims"). *Id.* at 44-51. The seventh and eight causes of action allege breaches of

7   promises or representations by Dollar Tree, implied or otherwise, related to the Privacy Policy (the

8   "contract claims"). *Id.* at 53-57. Relatedly, but not relying on the Privacy Policy, the fifth and

9   sixth causes of action are for common law fraud and unjust enrichment. *Id.* at 51-53. Finally,

10  Plaintiffs allege a trespass to chattels based upon the physical act of storing cookie files on

11  Plaintiffs devices without their consent. *Id.* at 57-58.

12      As relevant to Dollar Tree's motion to transfer, the Dollar Tree's T&C contain a forum-

13  selection clause selecting the Eastern District of Virginia. Dkt. 19-1 at 20. The Privacy Policy,

14  however, contains no such provision. Dkt. 19-1 at 7-15.

15  **III.    LEGAL STANDARDS**

16      **A.    Motion to Transfer**

17      "For the convenience of parties and witnesses, in the interest of justice, a district court may

18  transfer any civil action to any other district or division where it might have been brought." 28

19  U.S.C. § 1404(a). The "transfer inquiry proceeds in two steps. First, the Court determines

20  'whether the transferee district was one in which the action might have been brought by the

21  plaintiff.'" *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *2

22  (N.D. Cal. July 17, 2018) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)). Second, "the

23  Court conducts an individualized case-specific analysis of convenience and fairness" considering

24  the private interests of the Parties and certain public interests. *See id.*, (citing *Stewart Org., Inc. v.*

25  *Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted)).

26      "The calculus changes, however, when the parties' contract contains a valid forum-

27  selection clause, which represents the parties' agreement as to the most proper forum." *Atl.*

28  *Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62-63 and n.6 (2013). Then, "a court must

1    deem all factors relating to the private interests of the parties entirely in favor of the preselected

2    forum." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-88 (9th Cir. 2018).

3        Additionally, although a Court may consider the declarations or affidavits of the Parties in

4    deciding a motion to transfer, any "'uncontroverted allegations in [a] plaintiff's complaint must be

5    taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved

6    in [the] plaintiff's favor.'" *See All-Tex, Inc.*, 2018 WL 11473762, at *1.

7        **B.    Motion to Dismiss**

8        "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether

9    the court has subject matter jurisdiction." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D.

10   Cal. 2020). "[L]ack of Article III standing requires dismissal for want of subject matter

11   jurisdiction under Rule 12(b)(1)." *Id.* "A Rule 12(b)(1) jurisdictional attack may be facial or

12   factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial"

13   12(b)(1) challenge, as is presented here, the Court assumes a plaintiff's factual allegations to be

14   true and draws all reasonable inferences in plaintiff's favor. *Oracle Corp. v. ORG Structure*

15   *Innovations LLC*, No. 11-cv-3549 SBA, 2012 WL 12951187, at *3 (N.D. Cal. Mar. 30, 2012)

16   (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

17       Federal Rule of Civil Procedure 12(b)(3) allows a party to raise the defense of improper

18   venue. When venue is improper within a district, the court "shall dismiss, or if it be in the interest

19   of justice, transfer such case to any district or division in which it could have been brought." 28

20   U.S.C. § 1406(a).

21       Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint

22   if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, a

23   court may consider only "the complaint, materials incorporated into the complaint by reference,

24   and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian*

25   *Colleges, Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008). Courts generally "accept factual allegations

26   in the complaint as true and construe the pleadings in the light most favorable to the nonmoving

27   party." *Manzarek*, 519 F.3d at 1031. However, a court is not "required to accept as true

28   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

United States District Court
Northern District of California

7

1    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore,

2    Plaintiffs "generally need not plead around affirmative defenses." *Ploof v. Arizona*, No. 22-15061,

3    2023 WL 2929314, at *1 (9th Cir. Apr. 13, 2023).

4         If the court finds that dismissal is warranted, the "court should grant leave to amend even if

5    no request to amend the pleading was made, unless it determines that the pleading could not

6    possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

7    2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

8    **IV.    DISCUSSION**

9         **A.    Dollar Tree's Motion to Transfer is Denied**

10        As an initial matter, there is no dispute that the Eastern District of Virginia—the target

11   transfer forum—is a "district or division where [this case] might have been brought" originally.

12   Dkt. 17 at 25;  *see generally* Dkt. 35. Dollar Tree's principal place of business is Chesapeake,

13   Virginia, meaning that general personal jurisdiction is proper there and that Dollar Tree "resides"

14   there for the purposes of venue. Compl., ¶ 9; *see* 28 U.S.C. 1391. Meanwhile, the Named

15   Plaintiffs are all residents of California and Plaintiffs allege that the amount in controversy

16   exceeds $5,000,000 in the aggregate, such that diversity jurisdiction is proper. Compl., ¶¶ 6-10;

17   *see also* Dkt. 17 at 25.

18        Accordingly, the Court turns to the second prong of the transfer analysis:  whether the

19   private and public interests of convenience and fairness support transfer.

20        **1.    Dollar Tree has Not Shown that Plaintiffs are Bound by the Forum-Selection Clause in the Website Terms and Conditions**

21

22        The Court first addresses whether there is a binding forum-selection clause, because "a

23   valid forum selection clause should be given controlling weight in all but the most exceptional

24   cases." *Aimone v. Investorflow LLC*, No. 23-cv-00118-DMR, 2023 WL 3483287, at *3 (N.D. Cal.

25   May 15, 2023). Here, the Court finds that there is no such binding clause.

26        There are two agreements at issue here:  the Privacy Policy and the T&C. Plaintiffs admit

27   they are bound by the Privacy Policy;  indeed, at least the two contract claims rely on the Privacy

28   Policy's terms being binding. Compl., ¶¶ 25, 37, 184-85, 187;  Dkt. 35 at 16. However, the

United States District Court
Northern District of California

8

1    Privacy Policy contains no forum-selection clause.  Dkt. 19-1 at 7-15.

2         The T&C do contain a forum-selection clause.  Dkt. 19-1 at 20.  Dollar Tree argues that

3    Plaintiffs are bound by the T&C and thus its forum-selection clause.  *See* Dkt. 17 at 15-18.

4    Plaintiffs disagree, arguing that, although they used Dollar Tree's website, they were not bound by

5    the T&C because they are unenforceable browsewrap.  Dkt. 35 at 9-16.

6         "To form a contract under California … law, there must be actual or constructive notice of

7    the agreement and the parties must manifest mutual assent."  *Oberstein v. Live Nation Ent., Inc.*,

8    60 F.4th 505, 512-13 (9th Cir. 2023).  As to "actual notice," neither Party provides evidence as to

9    whether the Named Plaintiffs viewed the T&C of Dollar Tree's website.  *See* Dkt. 35 at 10

10   (Plaintiffs arguing, without supporting declarations, that Named Plaintiffs did not); Dkt. 9 (Dollar

11   Tree arguing for "limited discovery to determine whether Plaintiffs in fact … read … the

12   T[&C].").  "The party moving for transfer has the burden in showing that transfer is appropriate."

13   *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-CV-07223-EMC, 2020 WL 1922635, at *4

14   (N.D. Cal. Apr. 21, 2020), *aff'd,* 34 F.4th 1334 (Fed. Cir. 2022).  Accordingly, Dollar Tree has not

15   met its burden at this juncture to show that any of the Named Plaintiffs actually viewed the T&C.

16        As to constructive notice, both sides agree that Dollar Tree's T&C—which are available

17   only via hyperlink at the bottom of its webpage and are not part of any independent pop-up, sign-

18   in or check-box—are browsewrap.  *See* Dkt. 40 at 7-8 (Dollar Tree's reply); Dkt. 35 at 12-14

19   (setting forth Plaintiffs' "browsewrap" argument);  *see also Oberstein*, 60 F.4th at 513 ("At the

20   other end of the spectrum [from enforceable clickwrap agreements] are so-called 'browsewrap'

21   agreements, in which a website offers terms that are disclosed only through a hyperlink and the

22   user supposedly manifests assent to those terms simply by continuing to use the website," (cleaned

23   up) citations omitted)).  "Courts are generally reluctant to enforce such agreements[.]"  *Oberstein*,

24   60 F.4th at 513.  Plaintiffs argue that there is a "bright-line rule" and the inquiry ends here.  Dkt.

25   35 at 12-13 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014)).

26   Dollar Tree correctly points out, however, that *Nguyen* only disapproved of notice via hyperlink

27   "without more," suggesting the rule is not all-or-nothing.  Dkt. 40 at 7.  The *Oberstein* Court's use

28   of the word "generally" similarly suggests that the rule is not always a bright line.  *Oberstein*, 60

F.4th at 513.  Dollar Tree contends that Plaintiff's invocation of the Privacy Policy, which is contained in an adjacent and similarly placed hyperlink, "is the 'more'" that is required.  *Id.* at 7-8.

On the record before it, the Court disagrees.   While true that if Plaintiffs were attempting to rely on the website's hyperlink to assert claims under the Privacy Policy, it would be difficult to see how they could disavow having constructive notice of the adjacent, similarly placed T&C hyperlink, that is not what occurred here.  As Plaintiffs argue, "[i]t's not that we get to the privacy policy through the [hyperlinks at the] bottom of the web page.  Where the consumers … get to the privacy policies is by going to the mange cookie button."  Dkt. 53 ("Hrg. Tr.") at 16:8-18.[1]  The "Manage Cookies" popup, as pointed to by Plaintiffs, contains a clear, paragraph explanation of "Site Cookie Preferences" with an explicit statement that "[f]or more information about our privacy practices, [users should] see our Privacy Policy."  Compl., ¶ 24 (on Dollar Tree's website, "Privacy Policy" is an underlined hyperlink).  Thus, Plaintiffs allege a unique route to the Privacy Policy that does not implicate the T&C hyperlink.  Only the hyperlinks at the bottom of the webpage are insufficient to provide constructive notice.

Finally, Dollar Tree also argues that its T&C are incorporated into the Privacy Policy and referenced therein "in several places."  Dkt. 40 at 7-8;  Hrg. Tr. at 31:1-6.  In fact, there are only two such references, and neither is sufficient to incorporate the forum-selection clause against Plaintiffs.  The first reference is in the right-hand column of the 19th row of a 22-row chart;  it is inconspicuously placed, not hyperlinked, and the words "terms and conditions" are not even capitalized.  Dkt. 19-1 at 10.  The second reference is more robust, capitalizing and underlining the words "Terms & Conditions (/terms)" so as to call them to a user's attention.  *Id.* at 14.  But it is in a section expressly directed to Dollar Tree's coupon program, stating only that "[t]he [Coupon] Programs are subject to our [T&C]."  *Id.* at 10.  If anything, this might mislead a consumer into supposing that *only* the coupon program, and not general use of the website, is subject to the T&C.

---

[1] Plaintiffs' counsel appeared to indicate that some of the Named Plaintiffs' did not get to the Privacy Policy in the same way.  There may be some fine lines to be drawn at class certification, but as long as at least one Named Plaintiff remains to represent an alleged class, this is not grounds for transfer of the entire case.  *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("adequacy-of-representation … is satisfied as long as one of the class representatives is an adequate class representative.").

United States District Court
Northern District of California

1    Neither of these references is sufficient, without more, to incorporate the T&C into the Privacy

2    Policy.  *See In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (incorporation requires, in relevant

3    part, that "the incorporation [be] clear and unequivocal, the reference [be] called to the attention of

4    the other party and he consents thereto." (Cleaned up)).

5         The Court finds that, at this juncture, Dollar Tree has not met its burden to show that

6    Plaintiffs are bound by the T&C or the forum-selection clause therein.  In so finding, the Court

7    concludes as a matter of law[2] that the hyperlinks at the bottom of the Dollar Tree website are

8    insufficient to provide constructive notice to *these* Plaintiffs of their terms.  However, the Court

9    does not decide the factual question of whether Plaintiffs (Named Plaintiffs or potential class

10   members) received *actual* notice of the T&C.  As to actual notice, the Court merely decides that

11   Dollar Tree has not met its burden on the motion to transfer.

12                **2.    The Transfer Factors are Neutral or Tip Slightly in Plaintiffs' Favor**

13        Accordingly, the Court proceeds to the ordinary evaluation of the convenience and fairness

14   factors under Section 1404(a).  Pursuant to Section 1404(a), courts consider:  "the convenience of

15   the parties and witnesses [and] the interest of justice."  28 U.S.C. § 1404(a).  As the Ninth Circuit

16   has explained, in doing so, courts may consider:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to the plaintiff's cause of
> action in the chosen forum, (6) the differences in the costs of litigation
> in the two forums, (7) the availability of compulsory process to
> compel attendance of unwilling non-party witnesses, and (8) the ease
> of access to sources of proof

22   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  "Consistent with the

23   above, courts in this district have articulated additional factors such as [(9)] feasibility of

24   consolidation with other claims, [(10)] local interest in the controversy, and [(11)] relative court

25   congestion."  *Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2025 WL 35046, at *2 (N.D. Cal.

---

[2] *See Oberstein*, 60 F.4th at 518 ("[W]here the authenticity of screenshots is not subject to factual dispute, courts may decide the issue [of constructive notice provided by a webpage] as 'a pure question of law.'").

United States District Court
Northern District of California

Jan. 6, 2025). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Id.* (citing, *inter alia*, *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### a.    Convenience of the Parties is Neutral

Dollar Tree argues that its headquarters are located in the Eastern District of Virginia and that its current and former employees would find testifying in that district more convenient. Dkt. 17 at 29-30. Meanwhile, Plaintiffs argue that Named Plaintiff Walsh resides in this District, and that the other Named Plaintiffs would find travel to this District more convenient than to Virginia. *See* Dkt. 35 at 18-19. "Even where a corporate defendant is correct in claiming that it will provide more witnesses and those witnesses will provide the most relevant testimony," as Dollar Tree claims here, "corporations are better-equipped than individuals to absorb increased litigation costs." *Olosoni v. HRB Tax Grp., Inc.*, No. 19-cv-03610-SK, 2019 WL 7576681, at *4 (N.D. Cal. Nov. 27, 2019) (cleaned up). On the whole, the Court finds that transfer "would merely shift rather than eliminate the inconvenience" to the Parties, and thus this factor is neutral. *Id.*

### b.    Convenience of non-Party Witnesses is Neutral

"[T]he convenience of nonparty witnesses might present a more compelling case for transfer[.]" *Id.* The Parties have identified the following non-parties as potentially relevant to this litigation: OneTrust, a company headquartered in Atlanta, Georgia who provides technology for the Cookie Banner, (Dkt. 19-1, ¶¶ 12-13); various third-party companies who place cookies and collect data, including Brigade Capital Management, Macellum Capital Management, Google LLC, Meta Platforms, Inc., Microsoft Corporation, Epsilon Data Management, LLC, Pinterest, Inc. and BlueConic, Inc., (Dkt. 35 at 20; Hrg. Tr. at 19:10-18; Dkt. 41-1 (Plaintiffs' Initial Disclosures)); and the former employees of Dollar Tree, (Dkt. 17 at 29-30; Dkt. 19-1, ¶ 11).

According to Plaintiffs' representation, some third-parties are located in this District (Brigade Capital Management, Macellum Capital Management, Google LLC, Meta Platforms, Inc., Epsilon Data Management, LLC, Pinterest, Inc. and BlueConic, Inc.). *See* Hrg. Tr. at 19:19-22. Others are located in other districts (Microsoft in the Western District of Washington and OneTrust in the Northern District of Georgia), and Dollar Tree's represents on information and

12

1   belief that its former employees are located in Virginia.  Dkt. 19-1, ¶ 11.

2       Dollar Tree's representation is too thin to carry the day.  *See Visier, Inc. v. iCIMS, Inc.*,

3   No. 24-cv-07544-SVK, 2025 WL 589036, at *3 (N.D. Cal. Feb. 24, 2025) ("When establishing

4   inconvenience to witnesses, the moving party must name the witnesses, state their location, and

5   explain their testimony and its relevance.").  Yet, Plaintiffs' third parties are all large corporations,

6   expected to provide mostly electronic discovery.  *See* Hrg. Tr. at 20:10-22.  To the extent that

7   Plaintiffs seek to depose individuals, the Court can fashion remedies in setting the location of the

8   deposition to reduce the inconvenience to individuals.  *See Olosoni*, 2019 WL 7576681, at *4.  In

9   sum, this factor, too, is neutral.

10              **c.      Ease of Access to Evidence is Neutral**

11      In a similar vein, given "the electronic nature of most corporate files in the current age,"

12  and particularly in light of the fact that the claims at issue relate to the structure of an online

13  website, "relevant information will likely be equally easy to produce in either district."  *Id.* (action

14  involving a consumer class action related to an online advertising campaign).  Accordingly, this

15  factor is also neutral.

16              **d.      Plaintiffs' Choice of Forum Weighs Somewhat Against Transfer**

17      "Ordinarily, the defendant must make a strong showing of inconvenience to warrant

18  upsetting the plaintiff's choice of forum."  *Visier*, 2025 WL 589036, at *4.  "Though a plaintiff's

19  choice of forum may be given less weight in a scenario where plaintiffs' choice of forum is largely

20  fortuitous, such as in nationwide class actions, ... [it] is not purely fortuitous when a plaintiff

21  resides in the forum state and alleges that the conduct underlying her claims occurred in the forum

22  state and violated the forum state's laws."  *Olosoni*, 2019 WL 7576681, at *4.  Dollar Tree

23  contends that, in this case, Plaintiffs' choice should be afforded little weight because "the crux of

24  the present case lies not in California but in the Eastern District of Virginia," only one of the

25  Named Plaintiffs resides in this District and this District has "minimal interest in the parties or

26  subject matter."  Dkt. 17 at 25-27.  The Court is only persuaded in part.

27      First, where "operative facts" occurred is mixed.  Virginia is the relevant locale for Dollar

28  Tree's decision-making and representations.  However, California is also a relevant locale, as

Plaintiffs were allegedly tracked and advertised to by (some) of the third parties (noted in Section III.A.2.b.) in this District. *See Olosoni*, 2019 WL 7576681, at *4 (affording "great weight to Plaintiff's choice of forum" where they "allege that they were harmed by advertising directed to this District."). Second, when the residency of named Plaintiffs is split, the Court agrees that "the degree of deference granted to Plaintiffs' choice of forum must be reduced accordingly," but it is not eliminated. *E.g.*, *Hope v. Lunarlandowner.com, Inc.*, No. 2:20-CV-01783-TLN (DB), 2022 WL 597579, at *4 (E.D. Cal. Feb. 28, 2022) (weighing this factor "slightly against transfer."). Third, Dollar Tree's argument as to this District's interest in "the parties and the subject matter" depends upon the first two arguments; this District thus has some interest in the subject matter and some interest in the parties. Thus, the Court finds this factor weighs somewhat, but not "greatly," against transfer.

### e.    This Court is More Familiar with the Governing Law

Plaintiffs' causes of action are seven torts based in California common law and the two CIPA claims. Dollar Tree argues that there is "nothing particularly novel" about the privacy case here and that "Virginia has its own wiretapping statute [and] privacy statutes [that are] very similar," but also acknowledges that this Court "would be more familiar" with the governing law. Hrg. Tr. at 7:24-8:14. Dollar Tree also argues that "where, as here, a plaintiff asserts common law claims on behalf of a nationwide class, the court would likely be required to apply the law of numerous states," such that the familiarity interest is diminished. Dkt. 40 at 20.

Federal courts are indeed fully capable of construing the laws of jurisdictions outside their home state, and the Eastern District of Virginia "is presumably capable of applying California law;" nonetheless, "it is self-evident that this Court is more familiar with that law." *Visier*, 2025 WL 589036, at *4 (N.D. Cal. Feb. 24, 2025).

Moreover, as Plaintiffs represented at the hearing: "This is a California case, a California class with California laws." Hrg. Tr. at 13:4-13. The Complaint's language is a somewhat ambiguous as to the scope of the class, alleging that it consists of "[a]ll persons who browsed either of the Websites in the State of California after clicking the "Reject Advertising Cookies" button in the popup cookies consent banner…." Compl., ¶ 100. However, although Dollar Tree

14

argued that this would include non-residents who browsed Dollar Tree's websites while "transiting through California," (Hrg. Tr. at 30:5-14), Plaintiffs are masters of their complaint and, as the Court noted, it is not an unfair reading to suggest that the class is limited to California citizens.  The Court will accept Plaintiffs' representation on this matter.

Thus, on the whole, this factor weighs slightly against transfer.

### f.    Local Interest in the Controversy is Neutral

Two local interests are at odds in this case:  Virginia certainly has "a local interest … in deciding matters pertaining to businesses that are headquartered in the state."  *See Lenk v. Semiconductor Component Indus., LLC*, No. 20-cv-08099-EJD, 2021 WL 3616769, at *4 (N.D. Cal. Aug. 16, 2021).  "On the other hand, this District has an interest in protecting citizens of California from potential violations of California law."  *Olosoni*, 2019 WL 7576681, at *5. Accepting Plaintiffs' representation, as explained in Section III.A.2.g., above, that the alleged class here is limited to California consumers, these interests are in equipoise.  "Courts considering a similar split of interests between fora have concluded that this factor is neutral."  *Olosoni*, 2019 WL 7576681, at *5 (collecting cases).  This factor is neutral.

### g.    Relative Court Congestion Weighs Slightly in Favor of Transfer

Finally, Dollar Tree cited statistics as to the relative court congestion between this District and the Eastern District of Virginia.  *See* Dkt. 17 at 21-22.  "It is beyond dispute that the docket of this Court is heavily congested."  *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *7 (N.D. Cal. May 5, 2016).  But while Dollar Tree argues that this District is "one of the busiest courts in the nation," many of our sister Districts are still quite busy.  *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (Dec. 31, 2024), United States Courts (*available at* https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf) (last visited September 25, 2025) (*e.g.*, this District is #12 across the U.S. in total actions filed per judge; the Eastern District of Virginia is #39).  Overall, while the Eastern District of Virginia is less congested than this Court, the difference is not so stark that this factor is overriding.  Accordingly, this factor weighs slightly in favor of transfer.

\* \* \*

15

United States District Court
Northern District of California

In sum, the Court finds that most factors are neutral. *See, supra*, §§ III.A.2.a-c., e., g. Relative court congestion weighs slightly in favor of transfer, while familiarity with the governing law weighs slightly against it. *See, supra*, §§ III.A.2.f., h. Plaintiffs' choice of forum weighs somewhat, if not greatly, against transfer, and it tips the balance. *See, supra*, § III.A.2.d. Moreover, as the movant, Dollar Tree bears the burden of showing that transfer is appropriate. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 2020 WL 1922635, at *4, *aff'd*, 34 F.4th 1334. Accordingly, Dollar Tree's motion to transfer is **DENIED without prejudice**.[3]

**B.      Dollar Tree's Motion to Dismiss is Granted in Part and Denied in Part**

Dollar Tree moves to dismiss on three grounds. First, Dollar Tree argues that Plaintiffs lack Article III standing because they fail to allege a concrete injury in fact. Dkt. 18 at 2, 21-23. Second, it argues that two of the Named Plaintiffs do not reside in this District and that venue is thus improper. *Id.* at 2, 23-26. Finally, it argues that Plaintiffs fail to state any plausible claim for relief. *Id.* at 2-3, 26-35. The Court addresses each argument in turn.

**1.      Plaintiffs Have Alleged an Injury in Fact via Loss of Privacy, Loss of the Benefit of the Bargain and Loss of Value of Devices**

"Standing is a threshold matter central to [the court's] subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Id.* "Standing requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Dollar Tree challenges only the first element.

At the center of this case, Plaintiffs allege that "[c]ontrary to their express rejection of

---

[3] If, during or after discovery, Dollar Tree can show that all Named Plaintiffs had actual notice of the T&C, it may renew its motion to transfer on the grounds of the forum-selection clause only.

cookies and tracking technologies on [Dollar Tree's] Websites, Defendant nonetheless caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs [] browsers, stored on their devices, and transmitted to Third Parties along with user data." Compl., ¶ 3.  Plaintiffs allege that their data was actually collected and transmitted and that Third Parties "analyze[d] and aggregate[d] this user data … for their own purposes and financial gain." *Id.*, ¶¶ 3-5.  For the Privacy and CIPA claims, Plaintiffs allege that they were injured by Dollar Tree's intrusions upon their private communications. *See, e.g.*, Compl., ¶¶ 110-17, ¶¶ 124-27, 147-48.  For the fraud claim and contract claims, Plaintiffs allege the substantive loss of privacy as well as "harm in the form of diminution of the value of their private and personally identifiable information and communications," pecuniary gain for Dollar Tree, and loss of "the benefit of the bargain" with Dollar Tree. *E.g., id.*, ¶ 166-67, 176-77, 189, 200.  Finally, for the trespass claim only, Plaintiffs allege "reduction of storage, disk space, and performance of Plaintiffs' … computing devices" and related loss of value. *Id.*, ¶ 205-06.  In its motion, Dollar Tree contends that each of these alleged harms—loss of privacy, loss of value of communications, loss of value of devices, and "injury in contract"—is insufficient.  Dkt. 18 at 22-23.  Most of Dollar Tree's arguments are unpersuasive.

As to loss of privacy, as a general matter, "various intangible harms can … be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).  Dollar Tree challenges that the data here is non-sensitive data (as opposed to, *e.g.*, healthcare data) and has not traditionally supported Article III standing. Dkt. 18 at 22.  This Court disagrees.  An individual's "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," (Compl., ¶ 30) can be quite sensitive; loss in the privacy of such data supports Article III standing. *Gabrielli v. Motorola*, 2025 WL 1939957, at *6 (Motorola's use of cookies and other tracking technologies to collect *exactly* this kind of data was "sufficient to establish a

concrete injury to [a plaintiff's] right to privacy and confer standing.").[4]

   As to the alleged loss of the benefit of the bargain, Dollar Tree focuses on the *merits* of the claims, arguing that no valid contract was formed because Plaintiffs do not allege consideration, but Dollar Tree does not cite a single case where such an inquiry led to denial of standing.  Dkt. 18 at 23.  To the contrary, benefit of the bargain losses constitute a sufficiently "concrete and particularized" injury which satisfies the requirements of Article III. *See, e.g.*, *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *11 (N.D. Cal. Dec. 21, 2016) ("Lost benefit of the bargain is a viable theory of injury for breach of contract and unfair competition.").

   As to loss of value of communications, Dollar Tree argues that Plaintiffs lack standing because there is no allegation that they actually intended to sell their information.  Dkt. 18 at 22.  Plaintiffs respond that their willingness to sell is only one potential measure of value, and that this Court should consider instead what Plaintiffs would pay to keep their data private or what third parties would pay to acquire it.  Dkt. 37 at 14.  Dollar Tree replies that, even on such theories, Plaintiffs have not sufficiently alleged a loss in value of *their specific* data.  *See* Dkt. 42 at 11-12 (citing *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024)).  Here, the Court agrees with Dollar Tree.  While Plaintiffs' theory may be generally acceptable, there are no allegations as to whether the Named Plaintiffs would either sell their data *or* pay anything to protect their data.  *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value." (Emphasis in original));  *cf. also LaCourt v. Specific Media, Inc.*, No. 10-cv-01256-GW, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (in rejecting allegations of injury for purposes of Article III-standing analysis, explaining that "Plaintiffs do not explain

---

[4] Dollar Tree points this Court to another case of a similar posture, *Gabrielli v. v. Insider, Inc.*, wherein the court found the plaintiff *lacked* Article III standing because "[s]tatutory violations alone typically do not satisfy the concrete harm requirement" and CIPA "does not codify a substantive privacy right that bears a close relationship to a traditionally recognized harm."  No. 24-cv-01566-ER, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025).  *Insider* and *Motorola* appear directly at odds.  This Court finds *Motorola* to be more persuasive, as a case arising from this District and thus a court more familiar with substantive California law.

United States District Court
Northern District of California

how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party.").[5]

Finally, as to loss of value of their devices due to lost storage space and performance, the Court agrees with Plaintiffs. While Dollar Tree contends that cookies are harmless, (*see* Dkt. 18 at 23 (citing an online blog's explanation of cookies), Plaintiffs allege that harm occurred, (*see* Compl., ¶¶ 205-06). Unless Plaintiffs' allegation is so farfetched as to be implausible, the Court must take it as true. Plaintiffs' allegation is not so implausible. *See, e.g.*, *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 658 (N.D. Cal. 2024) (cookies that are not temporary "stay[] until [they] is discovered or removed[] and create[] a measurable impact on the functioning of the systems' memory sufficient to satisfy damage for the trespass."). Thus, at the pleading stage, Plaintiffs have alleged sufficient injury to justify standing for their trespass claim.

Accordingly, because each of Plaintiffs' claims is underpinned by at least one injury in fact, Dollar Tree's motion to dismiss for lack of Article III standing is **DENIED**.

### 2. Venue is Improper as to Plaintiffs Yosha and Maldonado, But Each of Them May Remain a Potential Class Member

Under Section 1391(b), venue is proper, in relevant part, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." 28 U.S.C. § 1391(b)(2).[6] Dollar Tree does not challenge that venue as to Plaintiff Walsh is proper in this district. Dkt. 18 at 23-26; Dkt. 42 at 12-14. Rather, Dollar Tree challenges that venue is not proper as to the claims of Plaintiffs Yosha and Maldonado, who reside in the Central and Southern Districts of California, respectively. *Id.*; *see* Compl., ¶¶ 7-8. Plaintiffs allege that they were

---

[5] However, none of Plaintiffs' claims rely solely on the diminution of value of their personal information. Accordingly, although Plaintiffs may amend to add details as to their "diminution of value" theory in order to pursue such damages, the absence of such allegations does not inhibit their ability to bring any claims at this stage.

[6] Dollar Tree's motion also analyzes subsections (b)(1) and (b)(3). It argues that, as to (b)(1), California does not have general jurisdiction over Dollar Tree and does not have specific jurisdiction over Dollar Tree *as to* Yosha or Moldonado's claims (as opposed to Walsh's claims). Dkt. 18 at 24-25. As to (b)(3), Dollar Tree notes that this action could have been brought in the Eastern District of Virginia. *Id.* at 25-26. Plaintiffs do not address the subsections separately, but do not contest that general jurisdiction is unavailable or that (b)(3) is inapplicable. *See* Dkt. 37 at 16-17. The remaining issue—of specific jurisdiction—is addressed in this Order.

United States District Court
Northern District of California

1    harmed when they visited Dollar Tree's website to browse information about their products and

2    interacted with the Cookie Banner.  *See* Compl., ¶¶ 76, 84, 92.  The fundamental issue is thus:  Do

3    Walsh's connections to this District satisfy the venue burden for Yosha and Maldonado, as

4    Plaintiffs argue, (Dkt. 37 at 17), or must Yosha and Maldonado "*independently* satisfy § 1391(b)'s

5    requirements," as Dollar Tree urges, (Dkt. 18 at 23 (emphasis by Dollar Tree))?

6          The Court agrees with Dollar Tree.  It is well-established that "in most instances, the rule

7    in a proposed class action is that each named plaintiff must independently establish venue."

8    *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017), *aff'd,* 905 F.3d 1137 (9th Cir.

9    2018) (venue ruling not challenged on appeal);  *Sanchez Mora v. U.S. Customs & Border Prot.*,

10   No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *6 (N.D. Cal. Nov. 4, 2024) (collecting cases).

11   The Court also agrees with Dollar Tree that "a substantial part of the events or omissions giving

12   rise to" Yosha and Maldonado's claims did not occur in this District:  While Plaintiff Walsh

13   browsed Dollar Tree's website here, the other Named Plaintiffs did not.  *See* Dkt. 18 at 15.

14         Plaintiffs do not contest the basic rule but raise three arguments for why venue should

15   nonetheless lie in this District, none of which is persuasive.

16         First, they argue that this Court has specific jurisdiction over Dollar Tree, and thus venue

17   under 28 U.S.C. § 1391(b)(1) irrespective of subsection (b)(2), because of Dollar Tree's

18   purposeful availment of the markets and laws of California.  *See* Dkt. 37 at 16.  Yet, Plaintiffs fail

19   to make any argument that *Yosha and Maldonado*'s claims arise out of or relate to Dollar Tree's

20   conduct in *this* District, despite acknowledging that this element is required.  *Id.* at 16-17.

21   Accordingly, neither Yosha nor Maldonado can *independently* (*i.e.*, without relying on Walsh's

22   claims) satisfy venue under Section 1391(b)(1) or (b)(2).

23         Second, relying on *Badvipour v. Blinken*, No. 24-cv-01458-DOC (KES), 2024 WL

24   5682032, at *6 (C.D. Cal. Dec. 30, 2024), Plaintiffs argue that there is an exception allowing

25   multi-plaintiff cases to proceed once one plaintiff has shown venue is proper.  Dkt. 37 at 17.

26   However, that case and the rule it recites deal with joinder in a multi-plaintiff case that is **not** a

27   class action.  *See Badvipour*, 2024 WL 5682032, at *1-*2, *5-*6.  The situation in non-class

28   action multi-plaintiff cases is understandably different, as "requiring all plaintiffs in a multi-

United States District Court
Northern District of California

20

1    plaintiff suit to independently meet venue requirements would lead to unnecessary litigation." *Id.*

2    (explaining the Ninth Circuit's approval of *Exxon Corp. v. Fed. Trade Commission*, 588 F.2d 895

3    (3rd Cir. 1978)).  In a class action there is no such risk because a single plaintiff may bring claims

4    on behalf of the entire class.  Moreover, if applied to class actions, the "exception" advocated by

5    Plaintiffs would swallow the rule.  Accordingly, it cannot apply here.

6          Third, Plaintiffs urge that, under the pendent venue doctrine, this Court may nonetheless

7    adjudicate Yosha and Maldonado's claims if "doing so is justified by principles of judicial

8    economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants."  Dkt. 37 at

9    17 (quoting *Beyard v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-KJM-SAB, 2025 WL

10   418706, at *5 (E.D. Cal. Feb. 6, 2025)).  The Court disagrees that judicial economy, convenience,

11   for fairness support the invocation of pendent venue here;  dismissal of Yosha and Maldonado

12   would not be inefficient or unfair where Plaintiff Walsh remains to represent the class and bring

13   class-wide claims.  *Cf. Saravia*, 280 F. Supp. 3d 1168 at 1191-93 and n.11 (retaining jurisdiction

14   over one plaintiff while dismissing two other plaintiffs and "noting that, even though J.G. and

15   F.E.'s individual claims were not properly brought in this forum, as members of the proposed

16   class, they could still benefit from relief granted on a class-wide basis [under A.H.'s claims].").

17         Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss Plaintiffs Yosha and

18   Maldonado as named plaintiffs for improper venue.  However, as already noted, as members of the

19   proposed class, Yosha and Maldonado can still benefit from relief granted on a class-wide basis

20   based on Walsh's claims in this District;  accordingly, the Court **DENIES** Dollar Tree's request to

21   sever their claims and transfer Yosha and Maldonado alone to the Eastern District of Virginia.[7]

22   *See Saravia*, 280 F. Supp. 3d 1168 at 1191 n.11.  Additionally, on the face of the Complaint, it

23   does not appear that Yosha or Maldonado could amend to support venue in this District.

24   Accordingly, their dismissal as named plaintiffs is **without leave to amend**.

25   ////

26   _____

27   [7] Even if Plaintiffs Yosha and Maldonado opted-out of any future class and pursued their claims
     individually, for the reasons already explained in Section III.A. of this Order, the Court is not
28   convinced that the Eastern District of Virginia—rather than the Central and Southern Districts of
     California—is the more convenient forum.

United States District Court
Northern District of California

### 3.    Dollar Tree's Rule 12(b)(6) Challenges are Granted in Part

Dollar Tree challenges all of Plaintiffs'[8] claims on 12(b)(6) grounds.  The Court treats

certain claims together and proceeds through each of Dollar Tree's challenges in turn.

### a.    Plaintiffs' Privacy Claims

Plaintiffs' privacy claims are for (Count I) invasion of privacy at common law, including

under the California Constitution, and for (Count II) intrusion upon seclusion.  Compl. at 40, 43.

The Parties agree that the privacy claims are analyzed together and require Plaintiffs to show that

Dollar Tree "(1) intentionally intruded into a … matter to as to which Plaintiffs have a reasonable

expectation of privacy[] (2) … in a manner highly offensive to a reasonable person."  *In re*

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (cleaned up)  (cited by

both Parties (*compare* Dkt. 18 at 26-27 *with* Dkt. 37 at 17-18)) (quoting *Hernandez v. Hillsides,*

*Inc.*, 47 Cal. 4th 272, 286 (2009)).  "Because of the similarity of the tests, courts consider the

claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the

intrusion was highly offensive."  *Id.*  Here, Dollar Tree challenges both Plaintiffs' reasonable

expectation of privacy in "browsing history, visit history, Website interactions, user input data,

demographic information, interests and preferences, shopping behaviors, device information,

referring URLs, session information, user identifiers, and/or geolocation data" and whether the

tracking and sharing of such information is highly offensive.  Dkt. 18 at 27-28.

### i.    Plaintiffs Have Sufficiently Alleged a Reasonable Expectation of Privacy

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly

based and widely accepted community norms.  Whether an expectation of privacy is 'reasonable'

depends on the circumstances of each case."  *Thomas v. Papa Johns Int'l, Inc.*, No. 22-CV-2012-

DMS (MSB), 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd,* No. 24-3557, 2025 WL

1704437 (9th Cir. June 18, 2025).  Dollar Tree argues that because the type of tracking

information at issue here "is routinely collected by websites across the internet," Plaintiffs cannot

---

[8] Although the Court has dismissed Yosha and Maldonado as named plaintiffs, the Court continues to refer to "Plaintiffs" in the plural as Walsh represents a putative class of plaintiffs.

United States District Court
Northern District of California

1    have a reasonable expectation of privacy.  Dkt. 18 at 27-28.  In response, Plaintiffs do not take

2    issue with this as a general assertion, but they argue that "there is no blanket rule that 'there can

3    never be a reasonable expectation of privacy over internet activity" and that Dollar Tree created

4    such an expectation in this case.  Dkt. 37 at 20-21 (quoting *Papa Johns*, 2024 WL 2060140, at *2).

5    Both Parties cite multiple examples where courts in this Circuit and District have found or have

6    declined to find a reasonable expectation of privacy.  Having considered Plaintiffs allegations in

7    light of widely accepted community norms,[9] the Court agrees with Plaintiffs.

8        "Generally, the internet is not a place where users have a reasonable expectation of

9    privacy."  *Papa Johns*, 2024 WL 2060140, at *1 (collecting cases).  However, as Plaintiffs

10   persuasively argue, Dollar Tree ***itself*** creates a reasonable expectation of privacy when it presents

11   customers with a Cookie Banner permitting them to "Reject Advertising Cookies."  Dkt. 37 at 20-

12   21;  *see, e.g.*, Compl., ¶¶ 1-2, 5, 26-31.  "Courts have held that plaintiffs have a reasonable

13   expectation of privacy where data is collected without their consent."  *In re Google Location Hist.*

14   *Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (citing *In re Facebook, Inc. Internet Tracking*

15   *Litig.*, 956 F.3d at 603) (finding that "it was reasonable for a user to believe that disabling

16   Location History prevented Google from collecting and storing location data.").  This case is of a

17   like kind;  having (allegedly) given users the option to "Reject Advertising Cookies" and so opt

18   out of having their data tracked, Dollar Tree cannot say that the users do not have a reasonable

19   expectation of privacy in such data.

20        ii.    **Plaintiffs Have Sufficiently Alleged Highly Offensive**
                 **Conduct**

21

22       "In order to maintain a California common law privacy action, [p]laintiffs must show more

23   than an intrusion upon reasonable privacy expectations.  Actionable invasions of privacy also must

24   be highly offensive to a reasonable person, and sufficiently serious and unwarranted so as to

25

26   ───────────────
     [9] "The existence of a reasonable expectation of privacy, given the circumstances of each case, is a
27   mixed question of law and fact."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601.
     The Court credits Plaintiffs' well-pleaded factual allegations relating to their expectation of
28   privacy as true (*e.g.*, the data at issue and details of the Cookie Banner) but does not impart any
     weight to Plaintiffs' conclusory allegations that their expectations were reasonable.

United States District Court
Northern District of California

1    constitute an egregious breach of the social norms." *In re Google Location Hist. Litig.*, 514 F.

2    Supp. 3d at 1157 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606)).  Dollar

3    Tree's primary argument is that none of the information alleged by Plaintiffs to be at issue is the

4    type whose disclosure is highly offensive.  Dkt. 18 at 27; Dkt. 42 at 14-15.  While the type of

5    information at issue is a factor, courts in this District "have held that deceit can be a kind of 'plus'

6    factor that is significant in making a privacy intrusion especially offensive."  *In re Google*

7    *Location Hist. Litig.*, 514 F. Supp. 3d at 1157 (cleaned up).

8            As to the types of data at issue, the disclosure of some types of data would clearly be more

9    offensive than others.  While Dollar Tree focuses on distinguishing the data at issue from sensitive

10   health or financial data (*see* Dkt. 18 at 27; Dkt. 42 at 14-15), the Court again notes that some of

11   the data at issue is or may be highly sensitive, especially "browsing history … user input data, …

12   and/or geolocation data," (Compl., ¶ 30).  While tracking and disclosure of such information is not

13   necessarily highly offensive, considering the "plus factor" of alleged deceit on the part of Dollar

14   Tree in collecting such information via the Cookie Banner, the Court concludes that Plaintiffs

15   have adequately alleged highly offensive conduct.  *In re Google Location Hist. Litig.*, 514 F.

16   Supp. 3d at 1157-58 (holding that deceit plus collection of location data was highly offensive).

17           Accordingly, because Plaintiffs have sufficiently alleged highly offensive conduct in the

18   collection and disclosure of their private information and have sufficiently alleged a reasonable

19   expectation of privacy, the Court **DENIES** Dollar Tree's motion.

20                       **b.        Plaintiffs' CIPA Claims**

21           Plaintiffs' CIPA claims allege violations of Cal. Penal Code § 631 (wiretapping) (Count

22   III) and Cal. Penal Code § 638.51 (pen register) (Count IV).  Compl. at 44, 49.  The RLC as

23   *amicus* explains the common history of both sections (both enacted as part of CIPA in the 1960s).

24   *See, generally*, Dkt. 29.  However, Dollar Tree challenges Plaintiffs' assertion of each count for

25   different reasons and the statutes include distinct requirements, (*see* Dkt. 18 at 28-30), so the

26   Court addresses each of Dollar Tree's arguments separately below.

27   ////

28   ////

United States District Court
Northern District of California

i.      **Plaintiffs Fail to State a Claim for Wiretapping Pursuant to Cal. Penal Code § 631**

Cal. Penal Code § 631(a) provides, in relevant part, that:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner,
>
> [(1)] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [(2)] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [(3)] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
>
> [(4)] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,
>
> is punishable [under this Section].

(subsections added and formatted for clarity). Dollar Tree argues that Plaintiffs have failed to plausibly: (a) allege that "the 'contents' of any of their alleged communications were intercepted;" (b) allege "that Dollar Tree itself intercepted their communications;" (c) explain how Dollar Tree could be held liable for wiretapping where it "is the intended recipient of any alleged communications;" and (d) allege the prerequisites for any "aiding and abetting under the fourth clause of CIPA § 631(a)." Dkt. 18 at 28-29.

In their Opposition, Plaintiffs disavow any reliance on direct liability by Dollar Tree: "Plaintiffs allege that Defendant is liable under the fourth prong of § 631(a) which merely requires that Defendant aid the Third Parties. … Plaintiffs are not arguing that Defendant is 'directly liable for wiretapping.'" Dkt. 37 at 23. Thus, Dollar Tree's second and third arguments are moot.

However, Section 631(a) requires Dollar Tree to have aided at least one of "the acts or things mentioned above." Cal. Penal Code § 631(a). Accordingly, Plaintiffs must allege that

United States District Court
Northern District of California

Dollar Tree aided third parties to either (1) make an intentional tap or unauthorized connection, (2) "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable…" or (3) "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."  Dollar Tree's first and fourth arguments are thus not moot.

As to the "contents" requirement, Plaintiffs clearly allege that certain types of data ("browsing history, visit history…," etc.) were transmitted to third parties.  Compl., ¶¶ 141-44.  Plaintiffs further allege that a "user's affirmative decisions, actions, choices, preferences, and activities" constitute the contents of their communications with Dollar Tree.  *Id.*, ¶ 143.  Dollar Tree challenges that "mere interactions with a website" do not constitute contents and are "non-actionable 'record information.'"  Dkt. 18 at 28.  Indeed,

> Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act where appropriate.  The Ninth Circuit has held that the "contents" of an online communication under federal wiretap law "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."

*Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014));  *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (explaining that "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" were mere "record information") (citing same)).  Plaintiffs acknowledge this distinction but argue that they fall on the correct side of the line because they have alleged collection and tracking of "user input data" which includes "search queries, the user's name, age, gender, email address, location, and/or payment information."  Dkt. 37 at 22 (citing same).  The Court agrees that "data entered into forms" and "URLs … include[ing] elements … such as search terms which would reveal the content a user searched for" and "full-string detailed URLs that might contain folder and file names" may be actionable "contents."  *Katz-Lacabe*, 668 F. Supp. 3d at 944-45 n.9.  However, the Court also finds that Plaintiffs' allegations as to "user input data"— the only category of data at issue that may constitute actionable contents—are insufficient because

1    Plaintiffs only allege that such data are among the types of data tracked by cookies.  Compl., ¶¶

2    20, 79-82.  Plaintiffs do not allege that Walsh actually generated any user input data or that such

3    data was read, attempted to be read, learned, or communicated in any way by or to third parties.

4         Beyond addressing the contents requirement, Dollar Tree vaguely challenges Plaintiffs'

5    failure to sufficiently plead an underlying violation of any one of prongs (1), (2) or (3).  Dkt. 18 at

6    29.  In response to Dollar Tree's challenge, Plaintiffs concisely and clearly lay out the specific

7    factual allegations they contend support "an intentional tap or unauthorized connection … "with

8    any line, cable or instrument," lack of "consent of all parties," the "read[ing] or learn[ing of] the

9    contents of any communication while in transit" and the "use[ of] any information so obtained."

10   Dkt. 37 at 23 (citing paragraphs by issue).  Dollar Tree's reply again vaguely and without

11   elaboration contests that these factual recitations are sufficient.  Dkt. 42 at 17.  The Court finds

12   that Plaintiffs' allegations are not mere "labels and conclusions" but are well-pleaded factual

13   allegations and are sufficient—with the exception of the "contents" issue—to state a claim as

14   pleaded.[10]

15        Finally, Dollar Tree argues that Plaintiffs have failed meet the intent requirement of

16   Section 631(a)'s aiding and abetting prong.  The Parties disagree as to the level of intent required

17   under the statute.  Dollar Tree argues that Section 631(a) requires acting with the "knowledge of

18   the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the

19   third party to commit those acts," (Dkt. 18 at 29 (citing *Smith v. YETI Coolers, LLC*, 754 F. Supp.

20   3d 933, 942 (N.D. Cal. 2024)), while Plaintiffs argue that a defendant need only have "intended

21   the act which enabled the privacy violation" "regardless of whether [it] specifically intended to

22

23   [10] At this juncture, the Court briefly addresses the RLC's submission that, based on its legislative
     history, CIPA was enacted for phone-based (not internet-based) taps and communications and that
24   Plaintiffs "manipulate a decades-old law for purposes which it was never intended."  *See* Dkt. 29
     at 7-10, 12-14.  The Court appreciates the context provided by the RLC and the troubling picture it
25   paints of potentially abusive litigation.  Nonetheless, the plain text of Section 631(a) is broad,
     extending to "any unauthorized connection, whether physically, electrically, acoustically,
26   inductively, or otherwise, with any … line, cable, or instrument."  Cal. Penal Code § 631(a).  In
     light of the numerous other cases having applied Section 631(a) to internet communications, (*see,
27   e.g.*, *Mikulsky*, 713 F. Supp. 3d 833 (S.D. Cal. 2024);  *Katz-Lacabe*, 668 F. Supp. 3d 928 (N.D.
     Cal. 2023)), and noting that Defendant Dollar Tree has not sought to dismiss the Section 631(a)
28   claim on the basis that CIPA is categorically inapplicable, the Court will not *sua sponte* dismiss
     Count III on this basis.

United States District Court
Northern District of California

enable unlawful conduct," (Dkt. 37 at 24 (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023)).[11]   The Court agrees with the court in *YETI Coolers* based on statute's use of the phrase "aids, agrees with, employs, or conspires … to unlawfully do, or permit, or cause to be done any of the acts [above]." *See YETI Coolers*, 754 F. Supp. 3d at 942.  The alternative would suggest that a defendant who permitted a third party to place cookies and track information **only** for consenting consumers might be held liable if a third party, without the defendant's knowledge, also placed such cookies and tracked information for unwilling consumers.  "Such a defendant has not aided, agreed with, or employed the third party *to* perform acts that violate the wiretapping statute." *Id.*

Here, as in *James v. Disney*, the Court can reasonably infer from Plaintiffs' allegations that Dollar Tree entered into agreements with the identified third parties to place cookies on the devices of consumers who visit Dollar Tree's website.  *See* Compl., ¶¶ 2, 19, 23, 25;  *see generally, id.*, ¶¶ 38-70;  *cf.* 701 F. Supp. 3d at 954.  Moreover, *YETI Coolers* dealt with a third-party payment processor and fraud prevention service such that any marketing might be unknown and unintended to the defendant.  In contrast, here it can be plausibly inferred that the reason Dollar Tree "caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs' and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data" *even for customers who opt out* of such tracking is that Dollar Tree intends to do so.  At the pleading stage, the Court must draw all reasonable inferences in favor of the Plaintiffs.  *Manzarek*, 519 F.3d at 1031.  Accordingly, while Dollar Tree may ultimately show that it did not intend third-party cookies to be placed in cases where consumers opted to "Reject Advertising Cookies," at this stage, Plaintiffs' allegations are sufficient.

---

[11] Plaintiffs also rely on the principle that the Ninth Circuit's analysis of the Wiretap Act is instructive and that in *United States v. Christensen*, 828 F.3d 763, 744 (9th Cir. 2015), the Ninth Circuit rejected the more stringent requirement in the federal act.  *See* Dkt. 37 at 25-28.  But "[c]ourts analyzing CIPA claims apply the same definitions for the federal Wiretap Act" only "where appropriate."  *Mikulsky*, 713 F. Supp. 3d at 845.  CIPA and the federal Wiretap Act are ultimately different statutes and, as the Ninth Circuit explained, the latter was specifically amended by Congress in "1986[] as part of the electronic communications privacy act[ to] substitute[] the word 'intentionally' for the word 'willfully.'"  *United States v. Christensen*, 828 F.3d at 774.  Accordingly, as to the *mens rea* required, interpretations of the federal Wiretap Act are less helpful than the plain language of Section 631(a).

United States District Court
Northern District of California

1    Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss the wiretapping CIPA

2    claim on the ground that Plaintiffs have not sufficiently alleged that the "contents" of Plaintiff

3    Walsh's communications, as opposed to mere record information, were read or learned or that

4    "information so obtained" was used or communicated.  Plaintiffs have **leave to amend**.

5                    **ii.        Plaintiffs Have Sufficiently Alleged Unlawful Use of a
                            Pen Register Pursuant to Cal. Penal Code § 638.51**

6

7    Cal. Penal Code § 638.51 generally prohibits a person from "install[ing] or us[ing] a pen

8    register or a trap and trace device without first obtaining a court order" or obtaining consent of the

9    user.  Cal. Penal Code §§ 638.51(a), (b)(5).  A "pen register" as "a device or process that records

10   or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or

11   facility from which a wire or electronic communication is transmitted, but not the contents of a

12   communication." Cal. Penal Code § 638.50(b).  Dollar Tree's main argument here is that cookies

13   and their related code are not pen registers because the term is one that is "inextricably linked to

14   telephone surveillance" and thus limited to telephone-related technologies.  Dkt. 18 at 30.

15   This is a relatively new issue.  Until July 27, 2023, it appears that "no court ha[d]

16   interpreted this provision of CIPA."  *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D.

17   Cal. 2023).  Beginning with *Greenley*, three district courts have examined the question and

18   concluded that, because "the California Legislature's chosen definition of pen register [] is specific

19   as to the type of data collected but vague and inclusive as to the form of the collection tool (*i.e.*

20   'device or process')," the process of using software to places cookies to track users online may

21   constitute a pen register.  *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797-CRB,

22   2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024);  *Greenley*, 684 F. Supp. 3d at 1050;  *Shah v.

23   Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024).  Dollar Tree has brought to this Court's

24   attention one additional, recent California trial court decision declining to find the mere "process

25   of collecting IP addresses" to be a pen register.  *Casillas v. Transitions Optical, Inc.*, No.

26   23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024).  Despite first appearances,

27   however, these decisions are not in conflict:  As reasoned in *Greenley*, *Shah* and *Mirmalek*, a

28   process, such as the placing of cookies, that collects IP addresses (or other routing, addressing, or

29

signaling information) can be a pen register under the plain meaning of the statute, (*see* Cal. Penal Code § 638.50(b), first sentence), and as reasoned in *Casillas*, such a process may then be carved out where it is merely "used by a provider … for billing, … for communications services provided by such provider, … or other similar purposes in the ordinary course of its business," (*see* Cal. Penal Code § 638.50(b), second sentence). *Compare Greenley*, 684 F. Supp. 3d at 1050 (finding the process of placing third-party cookies could constitute a pen register); *Shah*, 754 F. Supp. 3d at 929 (same); *and Mirmalek*, 2024 WL 5102709, at *3 (same) *with Casillas*, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) (finding that first-party cookies which only "collected Plaintiff's IP address," as "occurs when *any* user accesses *any* website," were subject to the carveout (emphasis added)). The Complaint implicates not only "Essential Cookies," which may be subject to the carveout similar to the first-party, IP-address-only cookies in *Casillas*, but also "Analytics Cookies" and "Advertising Cookies," which are not used "for billing," "communication services," or similar purposes. Compl., ¶ 25. Such cookies constitute pen registers under the statute.

Dollar Tree's counterarguments are unpersuasive.

First, Dollar Tree and the RLC argue that the legislative history supports that the California Legislature originally enacted the statute with telephonic communications in mind. *See* Dkt. 18 at 30; *see, generally*, Dkt. 29. To the contrary, however, "[g]iving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." *Shah v. Fandom*, 754 F. Supp. 3d at 930. Moreover, "the Court cannot ignore the expansive language in the California Legislature's chosen definition." *Greenley*, 684 F. Supp. 3d at 1050. Second, Dollar Tree argues that other sections of CIPA relating to pen registers assume a telephone line is at issue. *E.g.*, Cal. Penal Code § 638.52(d) (requiring that, in approving a pen register via a court order, a magistrate "shall specify all of the following: (1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register … is to be attached."). However, this, too, is insufficient to override the clear definition in Section 38.50(b) and the Court agrees with the *Shah* court's opinion reconciling these sections. *Shah v. Fandom*, 754 F. Supp. 3d at 930. Finally, Dollar Tree contends that Plaintiffs' assertion of Section 638.51

1   is incompatible with their assertion of Section 631(a), because the latter requires "contents" while

2   the former requires "routing, addressing, or signaling information" and expressly prohibits

3   application to contents. Dkt. 18 at 30. But Plaintiffs' claims encompass "browsing history, visit

4   history, website interactions, user input data, demographic information, interests and preferences,

5   shopping behaviors, device information, referring URLs, session information, user identifiers,

6   and/or geolocation data." Compl., ¶ 30. Some of these data may be contents, while others may

7   not be. Plaintiffs are permitted to plead both causes of action and rely on different cookies—

8   transmitting different data—to support each cause of action.

9        Accordingly, Dollar Tree's motion to dismiss the pen-register CIPA claim is **DENIED**.

10                    **c.    Plaintiffs' Contract Claims and Unjust Enrichment Claim**

11       The Court next turns the contract claims (Counts VII and VIII) and to Dollar Tree's related

12   argument as to Plaintiff's unjust enrichment claim (Count VI).

13                    **i.    Plaintiffs Have Not Sufficiently Pleaded Actual Damages**

14       Claims for breach of contract or for breach of the implied covenant of good faith and fair

15   dealing require allegation of actual damages. *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir.

16   2010) ("Under California law, a breach of contract claim requires a showing of appreciable and

17   actual damage." (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th

18   Cir.2000)); *Bennett v. Ohio Nat'l Life Assurance Corp.*, 92 Cal. App. 5th 723, 729 (2023) ("Both

19   breach of contract and breach of the implied covenant of good faith and fair dealing, *i.e.*, bad faith,

20   include a damages element.").[12] Dollar Tree argues that Plaintiffs have failed to sufficiently allege

21   actual damages. Dkt. 18 at 32-33.

22       The Court agrees. Of the four injuries alleged by Plaintiffs (*see, supra*, § III.B.1. (loss of

23   privacy, loss of value of communications, loss of value of devices, and loss of the benefit of the

24

25   ───────────────

     [12] Plaintiffs resist this requirement, arguing that "California Courts have rejected *Ruiz*," and citing
26   cases from both state courts and courts in this District declining to require actual damages. Dkt.
     37 at 29-30. But the unpublished *Ruiz* decision relied on *Aguilera*, a binding decision of the Ninth
27   Circuit. *Ruiz*, 380 F. App'x at 692. As the *Ruiz* Court made clear, "*Aguilera* binds us, as it did
     the district court." *Id.*; *see also Cabrera v. Google LLC*, No. 11-cv-01263-EJD, 2023 WL
28   5279463, at *6 (N.D. Cal. Aug. 15, 2023) (despite California authority arguably to the contrary,
     "this Court is bound to follow *Aguilera* as Ninth Circuit precedent.").

United States District Court
Northern District of California

bargain)), only loss of the benefit of the bargain and loss of value of their private communications relate to the contract claims. *See* Dkt. 18 at 33; Dkt. 37 at 30. As to the former, Dollar Tree argues that because Plaintiffs do not allege they paid anything to browse the website, while they may be injured by Dollar Tree's breach, there are no damages flowing from a loss of the benefit of the bargain. *See* Dkt. 18 at 33. As to the latter, Dollar Tree argues that they do not plausibly allege actual damages via the diminution of value of Plaintiffs' private communications. *Id.*

Plaintiffs only counter that, even though they did not pay to use the websites, "being caused to surrender more data without consent supports a breach of contract claim." Dkt. 37 at 30. Plaintiffs rely on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) and *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022), but neither case is persuasive. *Doe v. Meta* did not undertake an analysis of actual damages, deciding only that Facebook's "limitation of liability clause" did not warrant dismissal and noting that restitution damages were pleaded. 690 F. Supp. 3d at 1084-85. Meanwhile, *In re Google RTB*, although acknowledging that actual damages were an element, does not reveal or discuss what the plaintiffs' damages claims were – presumably because the argument was not raised by the litigants. 606 F. Supp. 3d at 944. Here, as discussed in relation to Article III standing, while "Plaintiffs' theory [as to the loss of value of their personal communications] may be generally acceptable, there are no allegations as to whether [Plaintiff Walsh] would either sell their data *or* pay anything to protect their data." *Supra*, § III.B.1. In the absence of such allegations, Plaintiffs have not sufficiently alleged actual damages resulting from breach of the Privacy Policy.

Separately, Dollar Tree argues that the breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of Plaintiff's breach of contract claim. Dkt. 18 at 33. Under California law, such claims may be dismissed when they "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990). Both Parties agree that allegations of bad faith beyond violation of a contract term may support a claim for breach of the implied covenant, citing *Calhoun v. Google LLC*. 526 F. Supp. 3d 605, 634 (N.D.

Cal. 2021) (wherein the court permitted the claim to move forward where there was an allegation that "Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers.").  Plaintiffs argue that they have alleged bad-faith behavior beyond mere breach of contract by placing cookies on Plaintiffs' devices and "tracking them despite their express rejection."  Dkt. 37 at 30.  Based on the Complaint in this case, the Court agrees with Plaintiffs:  They allege that Dollar Tree violated its own Privacy Policy, but they *additionally* allege that Dollar Tree made false representations by leading them to believe that they could "Reject Advertising Cookies" with the Cookie Banner.  Compl., ¶¶ 26-30.

Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss these claims as lacking sufficient allegations of actual damages but will not dismiss Plaintiffs' breach of implied covenant claim as duplicative.  Plaintiffs have **leave to amend**.

### ii.    Plaintiffs Permissibly Plead Unjust Enrichment in the Alternative

As to Plaintiffs' unjust enrichment claim (Count VI), Dollar Tree challenges that it is inconsistent with their allegation that the Privacy Policy is a contract and assertion of a breach of contract claim.  Dkt. 18 at 33-34.  Plaintiffs counter that they plead this claim only in the alternative.  Dkt. 37 at 31.

Rule 8 permits pleading in the alternative.  Fed. R. Civ. P. 8(a)(3).  However, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Hubbard*, 2024 WL 3302066, at *6.  In *Hubbard*, however, plaintiffs merely sought two different remedies (disgorgement of profits and economic injuries) arising from the same facts.  *Id*.  That is a key distinction from this case.  Here, looking to the facts underpinning the unjust enrichment claim, Plaintiffs claim unjust enrichment "as a result of [Dollar Tree's] wrongful conduct" relating to its misrepresentations via the "Reject Advertising Cookies" option of the Cookie Banner, with no mention of the Privacy Policy.  Compl., ¶ 172.  Plaintiffs further explain that this claim is pleaded "separately" and "in the alternative[] to other claims, as without such claims Plaintiffs would have no adequate legal remedy."  Compl., ¶ 182.  In other words, drawing

1   all reasonable inferences in Plaintiffs' favor at the pleading stage, they appear to allege that to the

2   extent the Privacy Policy is not an enforceable contract, they are entitled to recover under a quasi-

3   contract theory via the Cookie Banner.  *See* Compl., ¶¶ 172, 182.

4          This is sufficient at the pleading stage to invoke the alternative pleading permissions of

5   Rule 8.  Accordingly, Dollar Tree's motion to dismiss this claim is **DENIED**.

6                    **d.    Plaintiffs Have Not Sufficiently Pleaded Damages for Their**
                            **Common Law Fraud Claim**
7

8          As to Plaintiffs' common law fraud, deceit and misrepresentation claim (Count V), Dollar

9   Tree contends that Plaintiffs fail to satisfy the Rule 9(b) heightened pleading standard as well as

10  the requirement to plead damages.  Dkt. 18 at 31-32.  Rule 9(b) requires that the elements of a

11  claim for fraud be pleaded "with particularity," *i.e.*, a plaintiff must allege the "who, what, when,

12  where, and how" of the alleged deceit.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir.

13  2009).  The elements of a cause of action for fraud in California are: "(a) misrepresentation (false

14  representation, concealment, or *nondisclosure* ); (b) knowledge of falsity (or 'scienter'); (c) intent

15  to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Kearns v.*

16  *Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

17         The Court addresses the damages issue first.  The Parties' arguments are broadly a re-

18  statement  of their damages arguments in other sections, with Dollar Tree principally relying on

19  *Hubbard* and Plaintiffs seeking to distinguish it.  Dkt. 18 at 32;  Dkt. 37 at 28-29.  For the reasons

20  explained above, (*see, supra*, §§ III.B.1 (standing) and B.3.c. (contract claims)), the Court agrees

21  with Dollar Tree and finds that Plaintiffs have not plausibly alleged that they would either sell

22  their data or pay anything to protect their data.

23         Turning to the Rule 9(b) challenge, Plaintiffs proffer the who, what, when, where and how

24  in their Opposition, citing to portions of the Complaint.  Dkt. 37 at 27-28 (citing numerous

25  paragraphs of the Complaint).  In addition to the basic facts, they have alleged with particularity

26  customers' reliance on Dollar Tree's Cookie Banner's option to "Reject Advertising Cookies."  *Id.*

27  The remaining issue and the crux of the Parties' dispute is whether Plaintiffs have alleged intent

28  (*i.e.*, intend to induce reliance) and knowledge of falsity with particularity.  *See* Dkt. 18 at 31;

United States District Court
Northern District of California

34

1    Dkt. 42 at 19.

2        Here, Dollar Tree's argument misses the mark. "Malice, intent, knowledge, and other

3    conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs' general

4    allegations that Dollar Tree intended for customers (such as Plaintiff Walsh) to rely on the ability

5    to "Reject Advertising Cookies" and that they knew or should have known how their third-party

6    cookie placement operated is sufficient. *See* Compl., ¶ 164; *Gabrielli v. Haleon US Inc.*, No. 25-

7    cv-02555-WHO, 2025 WL 2494368, at *13 (N.D. Cal. Aug. 29, 2025) (explaining that "intent

8    may be alleged generally" and permitting the plaintiff's fraud claim to proceed based on his

9    general intent allegations).

10        Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss this claim as lacking

11    sufficient allegations of actual damages but finds that it otherwise satisfies the Rule 9(b) pleading

12    standard. Plaintiffs have **leave to amend**.

13                        **e.    Plaintiffs Have Not Sufficiently Pleaded Damages for Trespass
                               to Chattels Claim**

14

15        Finally, Dollar Tree challenges Plaintiffs' trespass claim (Count IX) arguing that Plaintiffs

16    have not plausibly alleged: (a) intent, (b) interference or (c) significant reduction in value. Dkt. 18

17    at 34-35.

18        "Under California law, trespass to chattels lies where an intentional interference with the

19    possession of personal property causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th

20    962, 968 (9th Cir. 2024) (internal quotation marks and citations omitted) (emphasis omitted). "In

21    order to prevail on a claim for trespass based on accessing a computer system," plaintiffs must

22    show: "(1) [the] defendant intentionally and without authorization interfered with plaintiff's

23    possessory interest in the computer system; and (2) defendant's unauthorized use proximately

24    resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70

25    (N.D. Cal. 2000).

26        As to intent, for the same reasons as explained with regard to Plaintiffs' wiretapping

27    claims, the Court agrees that Plaintiffs have sufficiently alleged intent. *See, supra*, § III.B.3.b.i.

28    (citing *cf. James v. Disney*, 701 F. Supp. 3d at 954 (agreeing with Plaintiffs' argument that "given

United States District Court
Northern District of California

United States District Court
Northern District of California

1   [the third-party tracking] software did not appear on Defendant's website out of nowhere, and that

2   Defendant benefits greatly from [these] services, it [can be reasonably inferred] Defendant

3   'intended' for [the third party] to eavesdrop on website visitors.");  *see also* Compl., ¶¶ 24-25

4   (*e.g.*, "When you visit our website, we store cookies on your browser to collect information.").

5          As to interference, "decisions finding electronic contact to be a trespass to computer

6   systems have generally involved some actual or threatened interference with the computers'

7   functioning." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024).  In response to

8   Dollar Tree's challenge, Plaintiffs point to (1) loss of security of their systems and (2) the

9   previously discussed loss of value of their devices due to lost storage space and performance.  *See*

10  Dkt. 37 at 31-32.  As to the first argument, whatever the potential merits of a loss-of-security

11  argument, such allegations are not present in Plaintiffs' Complaint.  The Court generally declines

12  to allow amendment-by-opposition and will not consider hypothetical allegations at this time.

13         As to the second argument, loss of value due to lost storage space and performance, this

14  "interference" allegation blends into the "damages" issue.  As to both issues, it is not necessarily

15  implausible, as discussed with regard to Article III Standing, above, that "reduction of storage,

16  disk space, and performance of Plaintiffs' … computing devices" may be both a sufficient

17  interference and lead to appreciable damages. *See, supra*, § III.B.1. (citing *In re Meta Healthcare*

18  *Pixel Litig.*, 713 F. Supp. 3d at 658 (cookies that are not temporary "stay[] until [they] is

19  discovered or removed[] and create[] a measurable impact on the functioning of the systems'

20  memory sufficient to satisfy damage for the trespass.")).  However, as Dollar Tree persuasively

21  argues, there are no allegations explaining how the cookies at issue in this case have actually

22  impaired Plaintiffs' devices – *e.g.*, how much storage space is taken up or whether any slowdown

23  in performance has been measured.  Without such detail, Plaintiff's allegations as to how Dollar

24  Tree's unauthorized interference "proximately resulted in damage to [Plaintiffs]" are merely

25  conclusory and insufficient.

26         Accordingly, the Court **GRANTS** Dollar Tree's motion to dismiss the trespass claim **with**

27  **leave to amend**.

28  ////

V.    **CONCLUSION**

For the forgoing reasons, the Court finds that Dollar Tree has not met its burden to show that the T&C are incorporated into the Privacy Policy or otherwise agreed to by Plaintiffs and has failed to carry its burden to show that the convenience to the Parties and interest of justice factors weight toward transfer.  Accordingly, its motion to transfer is **DENIED without prejudice to a showing re actual notice.**

Furthermore, the Cout **GRANTS IN PART** and **DENIES IN PART** Dollar Tree's motion to dismiss.  The following claims are dismissed:

- Plaintiffs Yosha and Maldonado's claims are **DISMISSED** for improper venue;
- Plaintiffs' wiretapping claim (Count III) is **DISMISSED with leave to amend**;
- Plaintiffs' contract claims (Counts VII-VIII) are **DISMISSED with leave to amend**;
- Plaintiffs' fraud claim (Count V) is **DISMISSED with leave to amend**; and
- Plaintiffs' trespass claim (Count IX) is **DISMISSED with leave to amend**.

Plaintiffs' amended complaint, if any, is due **no later than November 6, 2025**.  No new claims or parties may be added in any such amended complaint.

Finally, the Court hereby re-sets the initial case management conference in this case for **January 13, 2026 at 9:30am** via videoconference.  A Clerk's Notice shall follow.


**SO ORDERED.**

Dated: October 16, 2025


_Susan van Keulen_
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

37